IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JUDITH CLARK, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 2011-CV-207622 |
| AARON'S, INC., | ) ) | |
| Defendant. | ) ) ) | **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT
AND CLASS ACTION COMPLAINT**

COMES NOW Judith Clark, by and through her attorneys of record, and files this First Amended Complaint and Class Action Complaint on behalf of herself and all others similarly situated. This pleading is based upon the current information and belief of Plaintiff who hereby alleges as follows:

PARTIES

1.

Ms. Judith Clark (hereinafter "Ms. Clark" or "Plaintiff") is a resident of the State of Georgia.

2.

Aaron's, Inc. (hereinafter "Aaron's" or "Defendant") is a publicly traded corporation incorporated under the laws of the State of Georgia. Defendant is headquartered in Georgia with its principal office located at 309 East Paces Ferry Road, N.E., Atlanta, Georgia 30305. Defendant may be served at the same address through its registered agent, Elizabeth L. Gibbs.

JURISDICTION AND VENUE

3.

Jurisdiction and venue are proper given the facts alleged in this Complaint.

FACTUAL BACKGROUND

4.

Defendant is a national leader in the "rent-to-own" or "lease-to-own" industry. Defendant specializes in marketing household furniture, consumer electronics, household appliances, and computers to low or moderate income families without access to better sources of credit. Indeed, one of the Defendant's primary marketing messages is that there is no credit check to lease or purchase merchandise from Defendant.

5.

In the typical "rent-to-own" transaction, a consumer leases the items at issue for a monthly or semi-monthly fee. Upon the fulfillment of the lease terms, title passes from the vendor to the consumer with no additional consideration paid by the consumer. The consumer also has an option to purchase the items before the termination of the lease for an agreed upon price, with a portion of the prior lease payments applied as a credit towards the purchase.

6.

As part of its business model, Defendant offers customers "120 days same as cash" (the "120-day offer"). Should the consumer pay the purchase price for the leased items within 120 days of the beginning of the lease, the consumer's previous monthly payments are credited in full towards the purchase price of the items. The effect of this offer is that Defendant is extending a no interest loan to the consumer for 120 days.

7.

Each contract also includes additional boilerplate terms.  For example, the risk of loss in each of these leases is borne by the customer rather than Defendant.  Also, customers are prohibited from granting a security interest in, pawning, pledging, or otherwise encumbering title to the property.  Further, in the event that the consumer fails to pay under the terms of the contract, the Defendant retains the right to accelerate the indebtedness due under the contract, and repossess the items.  Finally, the consumer is responsible for all sales and use taxes.

8.

In effect, these alleged "leases" are a disguised financing agreement whereby Defendant loans its customers sufficient money to purchase the items in question, and simultaneously acquires a purchase money security interest in the items.  Like any other secured transaction, Defendant is entitled to repossess the items encumbered by the purchase money security interest in the event that a consumer defaults.

ALLEGATIONS SPECIFIC TO PLAINTIFF

9.

Ms. Clark entered into a contract with Defendant on September 30, 2010 (hereinafter the "September Contract" and attached as Exhibit A hereto).  This contract was for the purchase of a bedroom set.  As part of this contract, Ms. Clark was given a 120-day offer to purchase her bedroom set at the "Cash Price" listed in the contract.

10.

Ms. Clark entered into a contract with Defendant on October 7, 2010 (hereinafter the "October Contract" and attached as Exhibit B hereto).  This contract was described to Ms. Clark by Defendant's employees as an addendum to the September Contract because Defendant had

failed to include two pieces of furniture in her September Contract.  As part of this contract, Ms. Clark was given a 120-day offer to purchase the listed items at the "Cash Price" shown in the contract.

11.

Ms. Clark entered into a contract with Defendant on November 6, 2010 (hereinafter the "November Contract" and attached as Exhibit C hereto).  This contract was for the purchase of a living room set.  As part of this contract, Ms. Clark was given a 120-day offer to purchase the living room set for the "Cash Price" listed in the contract.

12.

At the beginning of January of 2011, Ms. Clark called Aaron's to request that a payoff statement be mailed to her showing the remaining amount due on her account so that Ms. Clark could take advantage of the 120-day offer.  Aaron's refused to provide her with a payoff amount over the phone, and refused to mail her a statement as she requested.

13.

Ms. Clark renewed all contracts with Defendant on March 31, 2011.  The first March contract consolidated the September Contract and October Contract into a single agreement (hereinafter referred to as the "March Bedroom Renewal" and attached as Exhibit D).  The second March contract renewed the November Contract (hereinafter referred to as the "March Living Room Renewal" and attached as Exhibit E).

14.

Ms. Clark's renewal was not voluntary.  Ms. Clark wanted to pay for her purchases in full pursuant to the 120-day offer.  However, Aaron's representatives had informed Ms. Clark that

they could not modify her account or allow her to pay it off unless and until she renewed her lease for another six months.  Therefore Ms. Clark renewed her lease for another six months.

15.

After renewing her leases on her bedroom set and living room furniture, Ms. Clark was informed by the store manager that the district manager would be in the store the next day and would correct her account at that time to allow for the payoff amount to be tendered by crediting her new leases with all the payments from the previous leases.  Ms. Clark called the next day to confirm that her account had been corrected and to ask for a copy of a statement showing the corrected billing.  Ms. Clark was informed that the district manager had failed to make it to the store, and would work on her account sometime the following week.  Ms. Clark followed up the following week, and was advised that the district manager still had not come in to correct her account.  Ms. Clark continued to make her payments per the contract.

16.

Subsequently, even after the store manager returned, Aaron's refused to correct the errors on Ms. Clark's account, refused to provide her a payoff amount under the original 120-day offer, and refused to honor its prior promises.  As a result, Ms. Clark has paid much more than she should have and yet still does not own the furniture at issue.

CLASS ALLEGATIONS

17.

Ms. Clark brings this action both individually and on behalf of all Aaron's customers (collectively "the Classes") who: (i) have entered into lease-to-own contracts with Defendant and have been refused a reasonable opportunity to pay off such contracts pursuant to the 120-day

offer (the "National Class"); and (ii) have been assessed interest charges, disguised as fees, in violation of applicable statutory law (the "Georgia Class").

18.

The Classes of persons described above are so numerous that joinder of all members by name in one action is impracticable. All injuries sustained by any member of the Classes arise out of the conduct of Defendant as described herein.

19.

Important questions of law and fact exist which are common to all members of the Classes and predominate over any questions that may affect individual Class Members in that Defendant has acted on grounds generally applicable to all members of the Classes. It will be shown that Defendant's refusal to honor the terms of the 120-day offer (and similar offers) through "bait-and-switch" tactics as described herein was the same for thousands of Defendant's customers identically situated to the named Plaintiff. It will also be shown that Defendant regularly violates statutory provisions, such as civil and criminal usury laws, in a similar manner as to all Class Members.

20.

All questions as to the actions attributable to Defendant herein are similarly common. A determination of liability for such conduct will also be applicable to all members of the Classes.

21.

The claims of the representative, Ms. Clark, are typical of the claims of the members of the Classes in that she suffered damages as a result of Defendant's improper practices.

22.

Plaintiff will fully and adequately represent and protect the interests of the entire Classes because of the common injuries and interests of the Class Members and the uniform conduct of Defendant as to all Class Members.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those of the Classes she seeks to represent.

23.

A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24.

The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Defendant under the laws alleged herein.

INDIVIDUAL RELIEF

COUNT I – GEORGIA FAIR BUSINESS PRACTICES ACT

25.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

26.

The Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. protects Georgia consumers from deceptive and unfair business practices.  The statute provides an extensive list of

examples of the kinds of business practices it seeks to prevent, although the list is not exhaustive and other unlisted conduct may also run afoul of the Act.

27.

Defendant informed Ms. Clark of its willingness to provide consumer furniture, appliances, and electronics pursuant to the terms of the 120-day offer. This 120-day offer induced Ms. Clark to enter into her contracts with Defendant.

28.

Defendant actively evaded its obligations to Ms. Clark under the 120-day offer. Defendant refused to mail statements to Ms. Clark, and refused to provide her with the amount remaining due under the 120-day offer. Defendant refused to acknowledge repeated letters sent by Ms. Clark regarding the 120-day offer and asking for a copy of her outstanding balance. Defendant further tied any and all discussion of purchasing her furniture before the end of her lease term to the renewal of her lease for another six-month term.

29.

Such behavior by Defendant constitutes the kind of "bait-and-switch" behavior encompassed and outlawed by the Georgia Fair Business Practices Act.

CLASS RELIEF

COUNT II – FALSE ADVERTISING

(On Behalf of the National Class)

30.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

8

31.

Georgia law prohibits advertising the sale of goods or services without intention to sell on the terms advertised.  O.C.G.A. § 10-1-420.  Similar laws with similar provisions have been enacted in each and every state in which Defendant conducts business.

32.

Upon information and belief, Defendant regularly promotes and advertises its willingness to provide consumer furniture, appliances, and electronics to customers pursuant to the terms of the 120-day offer.

33.

Upon information and belief, Defendant does not intend to actually provide its goods and services to the public pursuant to the 120-day offer, and actively evades its obligations through various ruses and hurdles not disclosed to the consumer before formation of the contract. Defendant accomplishes this by refusing to mail statements to customers, refusing to provide customers with the amount remaining due under the 120-day offer, and by other such means which will be uncovered during discovery.

COUNT III – MISREPRESENTATION AND NEGLIGENT MISREPRESENTATION

(On Behalf of the National Class)

34.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

35.

Upon information and belief, Defendant regularly promotes and advertises its willingness to provide consumer furniture, appliances, and electronics pursuant to the 120-day offer.

36.

Upon information and belief, Defendant does not intend to actually provide its goods and services to the public pursuant to the 120-day offer. This intention is never disclosed to consumers before they agree to the terms of the contract.

37.

Despite having advertised the 120-day offer to millions of consumers across the nation, Defendant actively evades its obligations. Defendant accomplishes this by refusing to mail statements to customers, refusing to provide customers with the amount remaining due under the 120-day offer, and by other such means which will be uncovered during discovery. The existence of these means is never disclosed to consumers prior to their entry into the contract.

38.

The effect of such behavior is to induce the consumer to enter into a contract upon terms which Defendant does not intend to honor. Consumers, who intend to take advantage of the 120-day offer, are thereafter forced to make monthly payments beyond the termination of the 120-day offer and are deprived of the benefit of the interest-free loan they were promised.

39.

Such behavior by Defendant constitutes a fraudulent "bait-and-switch" scheme regularly perpetrated on thousands of Defendant's customers each and every year.

## COUNT IV – EXPRESS BREACH OF CONTRACT

(On Behalf of the National Class)

40.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

41.

Upon information and belief, Defendant regularly promotes and advertises its willingness to provide consumer furniture, appliances, and electronics pursuant to the 120-day offer.

42.

Defendant regularly incorporates language memorializing the terms of the 120-day offer into its contracts with consumers.

43.

Upon information and belief, Defendant regularly fails to honor its 120-day offer made to consumers.  To evade the terms of the 120-day offer, Defendant regularly engages in behavior designed to thwart, hinder, or delay a consumer's ability to pay the outstanding balance due pursuant to the 120-day offer.  Such behavior includes, but is not limited to, refusing to provide the customer with payment information related to their account, refusing to mail account information to customers, and refusing to take payments in any manner other than at the store location.  These "strings" attached to the term and method of payment, were not disclosed or included in the written contract.

44.

Such evasion is an express breach of the contract Defendant regularly enters into with thousands of consumers across the nation each and every year.

COUNT V – BREACH OF CONTRACT
VIA BREACH OF GOOD FAITH AND FAIR DEALING

(On Behalf of the National Class)

45.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

46.

Under the law of every state, the duty of good faith and fair dealing – or an equivalent doctrine by another name – is an element of every contract.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance.  Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form.  Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as breaches of good faith in the performance of contracts.

47.

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.  But the obligation goes further; a lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  A complete catalogue of the varieties of breaches of good faith cannot be offered herein, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

48.

Where a party enters into an agreement, it incurs a duty to honor its obligations in good faith.  By refusing to provide Ms. Clark with the information she needed to fulfill the 120-day same as cash offer, Defendant actively undermined Ms. Clark's opportunity to receive the benefit of her bargain.

49.

By breaching its duties of good faith and fair dealing, Defendant has charged additional monthly payments to Plaintiff and Class Members due to its efforts to undermine customer attempts to take advantage of the 120-day offer it makes to each and every customer.

50.

Plaintiff seeks a judicial declaration determining that the charges imposed by Defendant are not consonant with Defendant's duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from Defendant's breach of its duties of good faith and fair dealing.

## COUNT VI – UNJUST ENRICHMENT

(On Behalf of the National Class)

51.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

52.

This Count VI is brought in the alternative only and Plaintiff concedes that, so long as her claims for direct or implied breach of contract are successful, she will not be permitted to pursue this claim for unjust enrichment. If, however, her contract claims prove unsuccessful, Plaintiff should be permitted to recover under the theory of unjust enrichment.

53.

By means of Defendant's improper conduct as alleged herein, Defendant knowingly imposed fees and payments on Plaintiff and members of the National Class that are unfair, unconscionable, and oppressive.

13

54.

Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the National Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the National Class.

55.

As a result of Defendant's unlawful conduct as alleged herein, it has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the National Class.

56.

Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

57.

Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of improper fees and payments on Plaintiff and members of the National Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

58.

The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the National Class. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the National Class all unlawful or inequitable proceeds received by them. A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiff and the members of the National Class.

<u>COUNT VII – UNCONSCIONABILITY</u>

(On Behalf of the National Class)

59.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

60.

Considering the great business acumen and experience of Defendant when compared to Plaintiff and those similarly situated, the great disparity in its relative bargaining power, the adhesive nature of the contract, the contract language chosen and used to hide the true nature of the transaction, the oppressiveness of the terms, the absence of a meaningful choice, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, and the allocation of the risks between the parties, and similar public policy concerns, the contract provisions are unconscionable and therefore unenforceable as a matter of law.

61.

Here, Ms. Clark and those similarly situated are consumers, not businessmen. Defendant does not negotiate these terms with any customers. Ms. Clark, like most consumers, was not in a position to bargain for more favorable contract terms, nor was she able to experience the results of Defendant's practices before contracting for the purchase of furniture from Defendant.

62.

Defendant has structured total one-sided transactions. The absence of equality of bargaining power, open negotiation, full disclosure, and a contract with fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the imposition of illegally high finance charges.

63.

All or portions of the Aaron's contracts are unconscionable and unenforceable. To the extent such contracts are not enforceable, Plaintiff's claims for breach of contract will fail and other claims, such as unjust enrichment, will provide for recovery.

64.

The Court should determine what aspects of the contracts are unconscionable and provide proper relief to make Plaintiff and the Class Members whole.

COUNT VIII – CIVIL USURY

(On Behalf of the Georgia Class)

65.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

66.

Georgia sets the statutory maximum interest rate for loans less than or equal to $3,000 at 16 percent simple interest per annum. O.C.G.A. § 7-4-2 (a)(2).

67.

Although Defendant attempts to disguise its transactions as leases of consumer goods, they are in reality loans of purchase money coupled with a security interest in the purchased good. As such, these "leases" are governed by Georgia usury laws.

68.

The Agreements entered into by Ms. Clark are, on their face, usurious. When the "Cash Price" listed in the Agreements is subtracted from the "Total Amount to Acquire Ownership"

listed in the "Lease Ownership" clause, the remaining amount is hundreds, sometimes thousands, of dollars more than the listed Cash Price. This remaining amount is interest.

69.

By way of example, the September Contract states that the "Cash Price" of the goods listed in the September Contract is $1,852.88. Assuming Plaintiff were to complete all 24 monthly payments as contemplated by the September Contract, the "Total Amount to Acquire Ownership" would be $3,606.00. This means that Ms. Clark is paying Defendant $1,753.12 in interest over the period of 24 months, or $73.04 per month in interest. Pursuant to Georgia law, the maximum amount of interest allowed for a loan of $1,852.88 is $296.46 per year, or $24.70 per month.

70.

By way of example, the October Contract states that the "Cash Price" of the goods listed in the October Contract is $175.99. Assuming Ms. Clark were to pay all 24 monthly payments as contemplated by the October Contract, the "Total Amount to Acquire Ownership" would be $335.28. This means that Ms. Clark is paying Defendant $159.29 in interest over the period of 24 months, or $6.64 per month in interest. Pursuant to Georgia law, the maximum amount of interest allowed for a loan of $175.99 is $28.16 per year, or $2.35 per month.

71.

By way of example, the November Contract states that the "Cash Price" of the goods listed in the November Contract is $439.99. Assuming Ms. Clark were to pay all 18 monthly payments as contemplated by the November Contract, the "Total Amount to Acquire Ownership" would be $839.16. This means that Ms. Clark is paying Defendant $399.17 in interest over the period of 18 months, or $22.18 per month in interest. Pursuant to Georgia law,

the maximum amount of interest allowed for a loan of $439.99 is $70.40 per year, or $5.87 per month.

72.

Defendant regularly engages in "lease-to-own" transactions with the majority of its customers and many of these transactions uniformly violate Georgia's civil usury laws.

COUNT IX – CRIMINAL USURY

(On Behalf of the Georgia Class)

73.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

74.

Georgia defines criminal usury as any rate greater than five percent per month of the principal amount. O.C.G.A. § 7-4-18. In Georgia, a civil cause of action exists for criminal usury. See Norris v. Sigler Daisy Corp., 260 Ga. 271, 271-72 (1990).

75.

While all of Defendant's loans violate the civil usury statutes of Georgia, some also violate Georgia's criminal usury statute.

76.

By way of example, Ms. Clark is paying $22.18 per month in interest on a principal of $439.99 pursuant to the November Contract. This is equal to a monthly interest rate of 5.04 percent, in violation of Georgia's criminal usury statutes.

18

77.

Defendant regularly engages in "lease-to-own" transactions with the majority of its customers and a sizable number of these transactions violate Georgia's criminal usury laws.

### COUNT X – VIOLATION OF GEORGIA RETAIL INSTALLMENT AND HOME SOLICITATION SALES ACT INTEREST RATE CAP

(Individual Relief Only)

78.

Plaintiff incorporates by reference the allegations in Paragraphs 1-24 above as if set forth verbatim herein.

79.

This Count X is brought in the alternative only.  Plaintiff concedes that, should her Agreements with Aaron's be found by the Court to constitute Retail Installment Contracts as defined at O.C.G.A. § 10-1-2(a)(9), she will likely not be able to pursue her civil and criminal usury claims listed in Counts VIII and IX.

80.

The Retail Installment and Home Solicitation Sales Act (the "Act") limits the interest rate that a lender may charge to no more than 13 percent per year on Retail Installment Contracts as defined therein.  O.C.G.A. § 10-1-3(d).  Because every loan made by Defendant to Ms. Clark violates Georgia's civil usury cap of 16 percent per year, every loan also violates the Act.

81.

If, as an alternative to civil and criminal usury, the Act is deemed to apply, Plaintiff should be afforded all statutory relief as described in the Act.

WHEREFORE, Plaintiff Judith Clark and the numerous Currently Unnamed Plaintiffs who would be members of the Classes pray:

(1)     For certification of this matter as a class action lawsuit to proceed on behalf of the Classes as described herein and as further defined after suitable initial discovery has been completed;

(2)     For restitution;

(3)     For an award of such damages as are authorized by law;

(4)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiff;

(5)     For trial by jury of all matters; and

(6)     For such other and further relief as the Court may deem just and equitable.

DATED this 16th day of November, 2011.

Respectfully submitted,

BY:     WEBB, KLASE & LEMOND, LLC

E. Adam Webb
  Georgia State Bar No. 743910
Matthew C. Klase
  Georgia State Bar No. 141903
John L. Lyon
  Georgia State Bar No. 833001

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 444-0271 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing upon counsel of record by depositing a copy of same in the United States mail, postage prepaid, and addressed as follows:

Elizabeth L. Gibbs
309 East Paces Ferry Road NE
Atlanta, Georgia 30305

DATED this 16th day of November, 2011.

John L. Lyon