# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JUDITH CLARK, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.

AARON'S, INC.,

      Defendant

)
)
)
)
)
)
)
)
)
)
)

Case No. 1:11-cv-04283-RWS

[On removal from the Superior
Court of Fulton County,
Georgia Case No.: 2011-cv-
207622]

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S "SECOND AMENDED COMPLAINT AND CLASS ACTION COMPLAINT"

Kristine McAlister Brown
Georgia Bar No. 480189
Matthew D. Montaigne
Georgia Bar No. 915455

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Fax: (404) 881-7777
kristy.brown@alston.com
matt.montaigne@alston.com

*Attorneys for Aaron's, Inc.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Aaron's, Inc. ("Aarons") moves to dismiss Counts II, V, VI, VII, VIII, IX, X, and XI of Plaintiff's Second Amended Complaint and Class Action Complaint ("Complaint").  For the reasons set forth below, these counts fail to state a claim upon which relief may be granted, and they must be dismissed.

## INTRODUCTION

Plaintiff's Second Amended Complaint asserts eleven claims against Aaron's.  Each of Plaintiff's claims arises out of her lease agreements, pursuant to which she leased merchandise from Aaron's.  Plaintiff does not allege that Aaron's failed to provide her with use of the merchandise she leased.  Rather, she alleges that Aaron's frustrated her ability to take advantage of a specific offer in the lease agreements – the "120 days same as cash offer."

Eight of Plaintiff's eleven claims fail as a matter of law and should be dismissed:

- Plaintiff's false advertising claim should be dismissed because the only relief available, as a matter of law, for this claim is injunctive relief, and Plaintiff neither seeks injunctive relief nor alleges facts that would entitle her to an injunction.

- Plaintiff's breach of good faith and fair dealing claim should be dismissed because it is duplicative of her express breach of contract claim.

- Plaintiff's unjust enrichment claim should be dismissed because the contracts between Aaron's and Plaintiff govern the parties' rights and responsibilities, and the existence of these contracts bars her claim for unjust enrichment.  Plaintiff cannot plead around this problem by purporting to assert her claims in the alternative.  Moreover, Plaintiff does not allege any

facts that would make it unjust for Aaron's to keep Plaintiff's lease payments when Aaron's provided Plaintiff with use of the merchandise it was contractually obligated to provide in exchange for those payments.

- Plaintiff's unconscionability claim should be dismissed because Plaintiff has not alleged any plausible claim for relief and because the contractual arrangement between the parties is expressly authorized by federal and state law and thus, as a matter of law, cannot be unconscionable.

- Plaintiff's civil usury claim should be dismissed because the contracts between the parties are leases under which there was no loan or forbearance of money.

- Plaintiff's criminal usury claim should be dismissed because there is no private right of action under O.C.G.A. § 7-4-18.

- Both Plaintiff's Retail Installment and Home Solicitation Act claims should be dismissed because (i) the transactions at issue are leases for the use of personal property by a lessee primarily for personal, family or household purposes with *an option* to purchase and (ii) as to Count XI, Plaintiff does not have standing to assert claims under other state's retail installment statutes.

For these reasons, and those more fully set forth below, this Court should grant Aaron's Motion to Dismiss.

## FACTUAL BACKGROUND[1]

A.    Plaintiff's Lease Agreements

Plaintiff entered into three lease agreements with Aaron's – on September 30, 2010, for lease of a bedroom set; on October 7, 2010, adding two items to the

---

[1]    For purposes of this Motion to Dismiss only, Aaron's takes the allegations in the Second Amended Complaint as true. *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006). Aaron's does not, however, in any way concede the veracity of Plaintiff's allegations.

earlier agreement; and on November 6, 2010, for lease of a living room set. (Second Am. Compl., ¶¶ 9-11; Exhs. A–C).[2]   Then, on March 31, 2011 Plaintiff consolidated and renewed the September and October agreements and also renewed the November Lease Agreement, leaving her with two active lease agreements with Aaron's (collectively, the "Lease Agreements").   (*Id.* at ¶ 13; Exhs. D, E).   Plaintiff does not allege that Aaron's failed to provide her with possession or use of any of the items she leased under these Agreements.

Pursuant to the Lease Agreements, Plaintiff "agree[d] to *lease* the items listed…according to the terms and conditions of this *Consumer Lease Agreement*." (*Id.*, Exs. A - E) (emphasis added).   Additionally, Plaintiff agreed that she was leasing the merchandise, with an option, but not an obligation, to purchase the merchandise.   Plaintiff's Lease Agreements further make clear that Plaintiff is leasing the Aaron's merchandise by expressly providing: "I understand that this transaction is a lease and not a conditional sale or financing agreement…[and] that title to the leased property remains with Aaron's and that I will neither own nor

---

[2]   This Court may consider the Exhibits attached to Plaintiff's Second Amended Complaint without converting Aaron's Motion to Dismiss into a motion for summary judgment. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Rule 7(a) defines pleadings to include both the complaint and the answer, and Rule 10(c) provides that []a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.") (internal quotations omitted); *see also Arch Ins. Co. v. Bennett*, No. 2:08-cv-0075-RWS, 2009 WL 5175591, at *2 (N.D Ga. Dec. 21, 2009) ("when considering a motion to dismiss, this Court must consider the complaint as well as the exhibits attached to it.").

obtain an equity interest in the Leased Property…" (*Id.*).

Plaintiff alleges that as part of her agreement to lease the bedroom set she "was given a 120-day offer to purchase her bedroom set at the 'Cash Price' listed in the contract." (Second Am. Compl., ¶ 9) (referred to by Plaintiff as the "120 day offer"). The lease attached as Exhibit B to the Second Amended Complaint sets forth the terms of the 120 day offer:

> If my payments are current, within 120 days of the Agreement Date, I may choose to purchase the Leased Property by paying either the Everyday Low Cash Price or the Advertised Special Price, whichever is lower, less the Lease portion of all previous payments (the Amount Due at Lease Signing, Monthly and Semi-Monthly Payments less Aaron's Service Plus Fees and Sales/Use Taxes), plus any other Fees and Applicable Sales/Use Tax…I may Exercise this option through the first 120 days.

This same offer was included in Plaintiff's agreement to lease the living room set. (*See id.*, ¶ 11; Ex. C).

B.    Plaintiff's Claims

Plaintiff alleges that she "wanted to pay for her purchases in full pursuant to the 120-day offer," but was prevented from doing so by Aaron's representatives. (Second Am. Compl., ¶ 14).[3] More specifically, she alleges that Aaron's did things like telling her that a district manager would be in the store the next day to

---

[3]  Notably, Plaintiff does not allege that she had the financial ability to purchase the leased items, but instead merely alleges that she "wanted" to purchase the items. (Second Am Compl., ¶ 14).

modify her account, telling her that the district manager failed to make it to the store, telling her that the district manager still had not come into correct her account, and refusing to provide Plaintiff with a payment amount. (*Id.*, ¶¶ 14 - 16). As a result, Plaintiff alleges that she "has paid much more than she should have and yet still does not own the furniture at issue." (*Id.*, ¶ 16).

## ARGUMENT AND CITATIONS OF AUTHORITY

A.    <u>Motion to Dismiss Standard</u>

"[T]o survive a motion to dismiss, a complaint must…contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 129 S.Ct. 1937, 1949 (2007)). "A complaint does not state a facially plausible claim for relief if it shows only 'a sheer possibility that the defendant acted unlawfully.'" *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint must present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). Furthermore, a complaint must present more than mere legal conclusions, which the court is not bound to accept as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). A complaint which merely recites the elements of a cause of action will not survive a motion to dismiss. *Waters Edge Living*, 355 F. App'x at 322-23.

B.   Plaintiff's False Advertising Claim (Count II) Should Be Dismissed

O.C.G.A. § 10-1-420 prohibits any "person, firm, or corporation" from advertising merchandise with the "intent, design, or purpose not to sell the merchandise…" O.C.G.A. § 10-1-420.  Plaintiff alleges that Aaron's violated this statute by promoting and advertising the 120-day offer without intending to actually provide the goods pursuant to the offer.  (Second Am. Compl., ¶¶ 32; 33).

The only relief available for a violation of O.C.G.A. § 10-1-420 is injunctive relief pursuant to O.C.G.A. § 10-1-423.  *See* O.C.G.A. § 10-1-423.  Yet, Plaintiff does not seek injunctive relief for this claim (or for any other claim in the Complaint).  (*See* Second Am. Compl., ¶¶ 30-33; Prayer for Relief).  Plaintiff also fails to allege that she lacks an adequate remedy at law for the conduct she alleges – a requirement for any injunctive relief claim.  *See State Rd. & Tollway Auth. v. Elec. Transaction Consultants Corp.*, 702 S.E.2d 486, 487-88 (Ga. Ct. App. 2010) ("'Entry of a  permanent injunction is appropriate [only] in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without an adequate remedy at law.'").  Plaintiff's failure to seek the only relief available for her claim (or to allege the requirements for obtaining such relief) requires dismissal of her false advertising claim.

C.   Plaintiff's Breach of Good Faith & Fair Dealing Claim (Count V) Should be Dismissed.

It is a fundamental tenet of Georgia law that "[t]he implied covenant of good faith does not create an independent contract term, but rather is 'a doctrine that

modifies the meaning of all explicit terms in a contract.'" *Rotech Healthcare, Inc., v. Chancy*, 392 F. Supp. 2d 1372, 1375 (M.D. Ga. 2005) (quoting *Stuart Enters. Int'l., Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001). Courts have consistently held that a claim for breach of good faith and fair dealing must be dismissed when it is duplicative of a concurrently alleged breach of contract claim. *See Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (M.D. Ga. 2005) (dismissing plaintiff's breach of good faith and fair dealing as duplicative); *Interland, Inc. v. Bunting*, No. 1:04-cv-444-ODE, 2005 WL 2414990, at *2 (N.D. Ga. March 31, 2005) (dismissing plaintiff's breach of good faith and fair dealing claim because it was "simply a part of its breach of contract claim…").

Plaintiff alleges the exact same conduct in support of her claim for breach of good faith and fair dealing and her claim for breach of contract – that Aaron's "refus[ed] to provide Ms. Clark with the information she needed to fulfill the 120-day same as cash offer." *Compare* (Second Am. Compl., ¶ 48) to (*Id.*, ¶ 43). Thus, Plaintiff's breach of good faith and fair dealing claim is duplicative and should be dismissed. *See Interland*, 2005 WL 2414990 (dismissing plaintiff's breach of good faith and fair dealing claim because it was "simply a part of its breach of contract claim…"); *Garrett*, 427 F.Supp.2d 1158, 1162 (M.D. Ga. 2005) (dismissing plaintiff's breach of good faith and fair dealing as duplicative).

D.     Plaintiff's Unjust Enrichment Claim (Count VI) Should be Dismissed.

"'The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received…'" *Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000) (quoting *Smith Dev, Inc.. v. Flood*, 403 S.E.2d 249 (1991)).   "'The theory of unjust enrichment applies when <u>there is no legal contract</u> and when there has been a benefit conferred which would result in unjust enrichment unless compensated.'"   *Smith Serv. Oil Co., v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001) (quoting *Cochran v. Ogletree*, 536 S.E.2d 194, 196 (2000) (emphasis added); *see also Arch Ins. Co. v. Bennett*, No. 2:08-cv-0075-RWS, 2009 WL 5175591, at *4 (N.D. Ga. Dec. 21, 2009).

1.     *Plaintiff's unjust enrichment claim fails because the Lease Agreements govern the parties' relationship.*

"'Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract.'" *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 73 (Ga. Ct. App. 2006) (quoting *St. Paul Mercury Ins. Co. v. Meeks*, 508 S.E.2d 646, 648 (Ga. 1998)).   Plaintiff alleges that she entered into several "contract[s]" with Aaron's, and in fact, brings this claim on behalf of a class Aaron's customers who also "entered into lease-to-own contracts with [Aaron's]." (Second Am. Comp., ¶¶ 9, 10, 11,13, 17).   Despite seeking refund of "imposed fees and payments," Plaintiff does not dispute that the challenged "fees and

payments" were charged in accordance with the express terms of the Lease Agreements. (*Id.*, ¶ 53).

Georgia courts have consistently rejected claims for unjust enrichment where, as here, there is an enforceable contract that governs the rights and obligations of the parties. *Tidikis v. Network for Med. Commc'ns & Res., LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) (affirming dismissal of claim on motion for judgment on the pleadings); *see also Donchi, Inc. v. Robdol, LLC*, 640 S.E.2d 719, 724 (Ga. Ct. App. 2007) ("'An unjust enrichment theory does not lie where there is an express contract.'"); *Morrell*, 633 S.E.2d at 73; *McCaughey v. Bank of Am. N.A.*, No. 1:05CV199, 2007 WL 2212633, at *2 (S.D. Ga. July 30, 2007), *aff'd,* 279 F. App'x 794 (11th Cir. 2008) ("[N]o cause of action can exist on these equitable, implied-contract grounds where an express contract governed the relationship between the parties."). Plaintiff's Lease Agreements govern the parties' rights and responsibilities with respect to the conduct that provides the basis for Plaintiff's unjust enrichment claim, and Plaintiff's unjust enrichment claim must be dismissed. *Bogard v. Inter-State Assurance Co.*, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) ("the existence of the contract between the parties precludes [plaintiff's] unjust enrichment claim.").

To avoid the problem that the parties' relationship is governed by the Lease Agreements, Plaintiff purports to assert an unjust enrichment claim "in the alternative only." (Second Am. Compl., ¶ 52). No amount of artful pleading can

obscure the fact that Plaintiff's unjust enrichment claim is rooted in Plaintiff's general contention that Aaron's "imposed fees and payments" that Plaintiff believes should be refunded.  (*Id*., ¶ 53).  Plaintiff, however, fails to mention that the "fees and payments" made by Plaintiff were made <u>as required</u> pursuant to the Lease Agreements.  Essentially, Plaintiff argues that Aaron's was unjustly enriched by collecting amounts it was entitled to under her Lease Agreements.  Consequently, there is no way to divorce Plaintiff's claim of unjust enrichment from her Lease Agreements – and supposed alternative pleading certainly does not rectify this fatal deficiency.   *See   White*, 563 F. Supp. 2d at 1371 (unjust enrichment claim dismissed despite alternative pleading because "Plaintiffs claim that there was a contract and that [the defendant] was unjustly enriched thereby within a single count.");   *see also Am. Casual Dining v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) ("Although [the plaintiff] argues that it is permissible to assert alternative and inconsistent claims, it cannot claim within a single count that there was an agreement and that the [defendant] was unjustly enriched.").[4]

---

[4]   Plaintiff cannot distance herself from the Lease Agreements by alleging that she will only pursue her unjust enrichment claim if her breach of contract claim fails.  Even then, the Lease Agreements would govern Plaintiff's unjust enrichment claim.

2.     *Plaintiff received value for her payments.*

Plaintiff's unjust enrichment claim is premised on the allegation that Aaron's "knowingly received and retained wrongful benefits and funds from Plaintiff and members of the National Class."  (Second Am. Compl., ¶ 54). Plaintiff, however, does not allege that Aaron's refused to provide her with the merchandise she leased even though she made the required lease payments.  To the contrary, Plaintiff's allegations make clear that she received value in the form of use of the leased merchandise in exchange for her payments to Aaron's.  (*Id.*, ¶¶ 9 – 16).  Because Plaintiff received value in exchange for her payments to Aaron's, Aaron's was not unjustly enriched by her payments, and Plaintiff's unjust enrichment claim should be dismissed.  *See Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187 (D.N.J. Dec. 3, 2009) (dismissing plaintiff's unjust enrichment claim where plaintiff failed to allege that she did not receive the item for which she paid); *Smith Serv.*, 549 S.E.2d at 487 (affirming dismissal of unjust enrichment claim because there was no allegation that plaintiff conferred a benefit for which it was not compensated); *Marili, Inc. v. Brown*, No. 00-1-5983, 2005 WL 4017736 (Ga. Super. Ct. Cobb Cty. Nov. 3, 2005) (classic case of unjust enrichment occurs where a party takes possession of an item without "returning, accounting for, or paying for" the item).

E.     Plaintiff's Unconscionability Claim (Count VII) Should be Dismissed.

To establish unconscionability, Georgia courts "require a certain quantum of procedural plus a certain quantum of substantive unconscionability."  *NEC Techs.*

*v. Nelson*, 478 S.E.2d 769, 773 n.6 (Ga. 1996).   Plaintiff does not specify any specific provisions of her Lease Agreements that she claims to be unconscionable. Instead, she merely alleges – in the most conclusory fashion imaginable – that "[a]ll or portions of the Aaron's contracts are unconscionable and unenforceable." (Second Am. Compl., ¶ 63).   Plaintiff then punts entirely on her burden of pleading "sufficient factual matter . . . 'to state a claim for relief that is plausible on its face,'" *Am. Dental Ass'n*, 605 F.3d at 1289, by alleging that "[t]he Court should determine what aspects of the contracts are unconscionable and provide proper relief." (*Id.* at ¶ 64).

Rather than trying to allege facts that would state a claim for unconscionability, Plaintiff resorts to simply reciting the legal standard for unconscionability. *Compare* (Second Am. Compl., ¶ 60) (alleging that "contract provisions" between Plaintiff and Aaron's are unconscionable due to "the oppressiveness of the terms…the commercial unreasonableness of the contract terms, the purpose and effect of the terms, and the allocation of the risks between the parties, and similar public policy concerns…"); *with   Mullis v. Speight Seed Farms, Inc.*, 505 S.E.2d 818, 820 (Ga. Ct. App. 1998) (when addressing "the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties and similar public policy concerns.").   Although Plaintiff claims that her Lease Agreements are

unconscionable because of "the contract language chosen and used to hide the true nature of the transaction," nowhere does she allege which contract language suffers this problem. (Second Am. Compl., ¶ 60). Instead, Plaintiff alleges generally that "all or portions" of the Lease Agreements are unconscionable. (*Id.*, ¶ 63). Likewise, although Plaintiff alleges that the terms of her Lease Agreements were oppressive and commercially unreasonable, she does not specify which terms were oppressive or unreasonable – much less why.

This Court is not required to accept Plaintiff's "threadbare recital[]" of the unconscionability factors as true. *Iqbal*, 129 S. Ct. at 1949. Accordingly, Plaintiff's unconscionability claim should be dismissed. *See Waters Edge Living,* 355 F. App'x at 322-23 (affirming dismissal of claim based upon "conclusory statements").[5]

---

[5]   Additionally, Plaintiff cannot establish that the Lease Agreements are unconscionable because federal and Georgia law specifically authorize the sort of lease that Plaintiff entered into with Aaron's. *Zepp v. Mayor & Council of Athens*, 348 S.E.2d 673, 678 (Ga. Ct. App. 1986) ("[T]hat which the law itself specifically permits cannot be 'unconscionable.'"); *Avery v. Aladdin Prods. Div., Nat'l Serv. Indus., Inc.*, 196 S.E.2d 357, 358 (Ga. Ct. App. 1973) (contract provision not unconscionable where specifically permitted by law); *see also* 15 U.S.C. § 1667a.   As discussed more fully below, the arrangement between Plaintiff and Aaron's is a lease.  The Lease Agreements cover goods that are primarily for personal, family, or household purposes; are for a term of four months and one day or longer; Plaintiff's lease payments under each lease do not exceed $25,000; and the Lease Agreements include an option to purchase the leased property.  This type of arrangement is expressly permitted under 15 U.S.C. § 1667a(1), which defines "consumer lease" as "a contract in the form of a lease or bailment for the use of personal property by a natural person for a

F.    Plaintiff's Civil Usury Claim (Count VIII) Should be Dismissed.

Under Georgia law, to prevail on a usury claim, Plaintiff must show: (i) a loan or forbearance of money; (ii) which is made with the understanding that the principal will be returned; (iii) in which the parties agree to a greater profit than is authorized by law; and (iv) the contract is made with an intent to violate the law. *Henson v. Columbus Bank & Trust, Co.*, 770 F.2d 1566, 1573 (11th Cir. 1985). Plaintiff's civil usury claim fails as a matter of law, among other reasons, because the contracts between the parties constitute actual leases, not "loans or any forbearance of money" made with the understanding that the principal will be returned.

1.    *There is no loan of money because the Lease Agreements are true leases.*

"To constitute a loan, there must be a contract under which, in substance, one party transfers to the other money that the other party agrees to repay

---

period of time exceeding four months, and for a total contractual obligation not exceeding $25,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease…" *See also* 12 C.F.R. § 213.2 (defining consumer lease).  Georgia law also permits parties to enter into "Lease-Purchase Agreements." *See* O.C.G.A. § 10-1-681(1).  While this statute is not applicable to Plaintiff's lease agreements, it indicates the Georgia legislature's approval of the type of transaction entered between Aaron's and Plaintiff (i.e., a lease through which a lessee has an option to purchase the leased items).

absolutely, together with additional amounts as agreed for its use, regardless of its form."   47 C.J.S. Interest & Usury § 192 (2011).   Aaron's is not transferring money to Plaintiff that Plaintiff agrees to repay to Aaron's.   To the contrary, the only party transferring money under the Lease Agreements is Plaintiff.   In exchange for this transfer of money, Plaintiff enjoys the use of tangible merchandise provided under the Agreements.

Plaintiff alleges that "Defendant attempts to disguise its transactions as leases of consumer goods," but "they are in reality loans of purchase money coupled with a security in the purchased goods." (Second Am. Compl., ¶ 67).   The very Lease Agreements upon which Plaintiff bases her claims foreclose this argument.   The exhibits to Plaintiff's own Second Amended Complaint establish that Plaintiff "agree[d] to lease the items listed…according to the terms and conditions of this Consumer Lease Agreement."   (*See e.g.*, Second Am. Compl., Ex. A).   Additionally, the Lease Agreements specifically provide that "I understand that this transaction is a lease and  not a conditional sale or financing agreement…" *See e.g., id.*

Although Plaintiff claims that here Lease Agreements are disguised "loans of purchase money coupled with a security interest in the purchased good," an analysis of the Lease Agreements under Georgia law proves this is wrong.   Under O.C.G.A. § 11-2A-103(j), a lease is "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval

or a sale or return, or retention or creation of a security interest is not a lease." O.C.G.A. § 11-2A-103 (j).   O.C.G.A. § 11-1-201(37) provides guidance as to whether an agreement is a lease or an agreement creating a security interest.  "The Georgia Legislature amended O.C.G.A. § 11–1–201(37) in 1993 to provide a codified distinction between documents creating security interests and lease agreements."  *See In re Paz*, 179 B.R. 743, 746 (Bankr. M.D. Ga. 1997).  O.C.G.A. § 11-1-201(37) sets forth when a transaction creates a security interest.  Even more pertinent, O.C.G.A. § 11-1-201(37) also provides that

> [a] transaction ***does not create a security interest*** merely because it provides that (a) the present value of the consideration the lessee is obligated to pay the lessor…is substantially equal to or greater than the fair market value of the goods at the time the lease is entered into…(b) The lessee assumes risk of loss of the goods, (c) The lessee has an option to renew the lease or to become the owner of the goods, (d) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or (e) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed…(emphasis added).

Under these standards, Plaintiff's Lease Agreements are transactions which do not create security interests.   Plaintiff is not required to renew the Lease Agreements, nor is she required to purchase the leased property.  *See also Lamar v. Mitsubishi Motors Credit of Am. ( In re Lamar)*, 249 B.R. 822, 826 (Bankr. Ct. S.D. Ga. 2000) (arrangement was true lease where "lessee was not required to

renew the lease or purchase the equipment at the end of the term…").[6]

Additionally, the Lease Agreements specifically provide that they are leases rather than conditional sales and each customer acknowledges therein that "title to the Leased Property remains with Aaron's and that I will neither own nor obtain equity interest in the Leased Property until I have satisfied one of the purchase options." (*See e.g.,* Second Am. Compl., Ex. A); *See Mr. C's Rent to Own v. Jarrels (In re Jarrells)*, 205 B.R. 994 (Bankr. M.D. Ga. 1997) (agreements in question were true leases where lessee was not required to renew lease or purchase the property, to make down payment or security deposit, lessor was responsible for maintaining property, the agreement expressly provided that the lessee would not own the property unless she purchased it, and the agreement provided that it was intended as a lease).

Courts have consistently held that agreements similar to the Lease Agreements are leases, not purchase money loans. *See In re Jarrells*, 205 B.R. 994. In *Jarrells*, the Bankruptcy Court for the Middle District of Georgia analyzed whether a "Rental Purchase Agreement" was a lease or security agreement under

---

[6] The fact that a lessee may have an option to purchase the items under lease does not change the lease to a security agreement or conditional sale. *See* 12 C.F.R. § 213.2(e)(1) ("Consumer lease means a contract in the form of a bailment or lease for the use of personal property by a natural person primarily for personal, family, or household purposes…whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease.").

O.C.G.A. § 11-1-201(37).[7]   The court observed that the lessee was "not required to renew the agreements or to purchase the property…[and] was not required to make a down payment."   *Id*. at 999.   The court further noted that "[t]he agreements expressly provide that, by signing the agreements, [lessee] intends to rent rather than purchase the property.   The agreements expressly provide that Respondent will not own the property unless she buys it or acquires ownership as provided by the terms of the agreements."   *Id*.   Based on these factors, the court concluded that under "the applicable Georgia law…the Rental Purchase Agreements are true leases."   *Id*.   Plaintiff's Lease Agreements have all of these same characteristics, and under *Jarrells*, they are leases not loans.[8]

Other courts have held that lease agreements like Plaintiff's do "not implicate the usury statute" because they "do [] not involve an extension of credit." *Goodtimes, Inc. v. IFG Leasing Co.*, 788 P.2d 853, 855 (Idaho Ct. App. 1990).   For example, in *Crumley v. Berry*, 766 S.W.2d 7 (Ark. 1989), the court specifically held that a "rental with option to purchase" was a true lease and did not implicate

---

[7]   The movant in *In re Jarrels*, was "a rent to own business," which rented and sold "new and used furniture and appliances."   *In re Jarrells*, 205 B.R. at 995. Similarly, Plaintiff alleges that Aaron's is "a national leader in the 'rent-to-own' or 'lease-to-own' industry."   (Second Am. Compl., ¶ 4).

[8]   Additionally, the Internal Revenue Services has held that, for accounting purposes, rent-to-own contracts may be treated as leases.   Rev. Proc. 95-38, 1995-34 I.R.B. 25.

the usury laws because the lessee was not obligated to purchase the leased item. *Id.* at 10. The same is true here. *See In re Jarrells*, 205 B.R. at 999.

2.    *The Lease Agreements do not constitute a forbearance of money.*

Similarly, there is no forbearance of money here to trigger application of the usury statute. Forbearance is "[t]he act of refraining from enforcing a right, obligation, or debt." *Black's Law Dictionary* 717 (9th Ed. 2009); *see also Marler v. Dancing Water Lakes, Inc.*, 305 S.E.2d 876, 878 (Ga. Ct. App. 1983) ("'Forbearance' is defined as an '[a]ct by which creditor waits for payment of debt due him by debtor after it becomes due…'") (quoting *Black's Law Dictionary* (4th ed. 1951)). Here, it is clear that Aaron's is not refraining from enforcing a right or debt, specifically a debt, because no debt has been created. As explained above, instead, Aaron's transferred "the right to possession and use of" the items under Plaintiff's Lease Agreements to Plaintiff in "in return for consideration" (i.e., the Monthly Lease Rate in each Lease Agreement). O.C.G.A. § 11-2A-103(j). Square pegs do not fit into round holes, and there is no forbearance of money here.

3.    *The 120-day offer is not a loan.*

Plaintiff argues that the 120-day offer is a "no interest loan to the consumer for 120 days." (Second Am. Compl., ¶ 6). This argument assumes that Plaintiff is obligated to purchase the leased items at the end of the lease term, which she clearly is not. ("I can terminate this Agreement without penalty at any time after expiration of the Lease Term by surrendering or returning the Leased Property in

good repair and paying all Payments and other fees through the date of surrender or return.") (*See e.g.*, Second Am. Compl., Ex. A)).  Thus, any payment made prior to the exercise of the 120-day offer is merely a lease payment and not a loan of money or extension of credit.

Nor is the 120-day offer a forbearance of money.  To take advantage of the 120-day offer, Plaintiff's payments under the lease must be current.  Thus, Aaron's is not refraining from enforcing its right to collect Plaintiff's lease payments for the use of its merchandise.

In short, nothing about the 120-day offer changes the analysis that the Lease Agreements are true leases, not loans.  In *Royce, Inc. v. Powers (In re Powers)*, 138 B.R. 916, 917 (C.D. Ill. 1992) , *aff'd* 983 F.2d 88 (7th Cir. 1993), the parties entered into a "Rental Purchase Agreement," that allowed

> for a 90 day same as cash purchase and contain[ed] an early buy-out option, which may be exercised after 90 days, that permits the renter to buy the goods at any time in the effective period of the agreements by paying a price equal to the total of all scheduled payments less the total of all payments made, times 50%.

The court concluded that the "Rental Purchase Agreement" was a true lease under Section 1-201(37) of the U.C.C. because, among other things, "the renter acquires no equity in the property," and because the lessor "has the obligation to maintain the goods." *Id*. at 923.[9]  Plaintiff's Lease Agreements are no different.

---

[9]      O.C.G.A. § 11-1-201(37) is modeled after U.C.C. 1-201(37).  *See* O.C.G.A.

The Lease Agreements provide that Plaintiff "will neither own nor obtain an equity interest in the Leased Property until I have satisfied one of the Purchase Options" and that "Aaron's will maintain the Leased Property in a good condition as long as I am leasing it…"  (See Second Am. Compl., Ex. B).  Thus, following the reasoning in *In re Powers*, the 120-day offer does not change the fact that the Lease Agreements are true leases under Georgia law.  For all of these reasons, Plaintiff's usury claims fail as a matter of law

      G.     Plaintiff's Criminal Usury Claims (Count IX) Should be Dismissed.

Plaintiff's criminal usury claim should be dismissed because there is no civil cause of action for violating the penal provisions of O.C.G.A. § 7-4-18. *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 458 (Ga. 2010) ("[T]he purpose of the criminal usury statute was not to alter the existing civil forfeiture provisions by creating a new cause of action for the forfeiture of all principal and interest, but instead to enhance the existing forfeiture remedy 'by adding the criminal penalty of misdemeanor' when the interest rate was particularly exorbitant.").  Furthermore, even if the Court were to conclude that O.C.G.A. § 7-4-18 creates a private right of action (and it should not), O.C.G.A. § 7-4-18 is inapplicable because it only applies to loans of money.  *See Goldkist, Inc. v. McNair*, 303 S.E.2d 290, 291 (Ga. Ct. App. 1983) (holding that O.C.G.A. § 7-4-18 "applies only to loans of money and is inapplicable to credit purchases.").  As set

---

§ 11-1-101.

forth above, Plaintiff's Lease Agreements are not loan agreements, and thus the criminal usury statute does not even apply here.

H.   Plaintiff's Georgia Retail Installment and Home Solicitation Act (Count X) Should be Dismissed.

In the alternative to her usury claims, Plaintiff seeks relief under the Retail Installment and Home Solicitation Act, O.C.G.A. § 10-1-1, *et seq* ("RISA"). Plaintiff's RISA claim fails for the same reason her usury claims fail -- Plaintiff's transactions are leases, not sales.

RISA governs the content and structure of retail installments contracts. *See* O.C.G.A. § 10-1-3. Under RISA, a "retail installment contract" is defined as

> an instrument or instruments reflecting one or more retail installment transactions entered into in this state pursuant to which goods or services may be paid for in installments. The term includes a series of transactions made pursuant to an instrument or instruments providing for the addition of the amount *financed* plus the time price differential for the current *sale* to an existing balance.

O.C.G.A. § 10-1-2(a)(9)(emphasis added).

Retail installment contracts clearly contemplate a *sale of goods*, not a lease. *See, e.g.*, O.C.G.A. § 10-1-3 ("Every retail installment contract shall be in writing and shall be completed as to all essential provisions prior to the signing thereof by the *buyer*…The contract shall contain the names of the *seller* and the *buyer*…) (emphasis added).  This point is further made clear by the provisions of RISA that define a "seller" as a "person regularly engaged in, and whose business consists to a substantial extent of, *selling goods* or services to a retail buyer,"  O.C.G.A. 10-1-

2(a)(11) (emphasis added), and a "retail buyer" under RISA is "a person who **buys**

**goods** or obtains services from a retail seller in a retail installment transaction…"

O.C.G.A. 10-1-2(a)(8) (emphasis added).[10]

As discussed in Section F.1 above, Plaintiff's Lease Agreements are leases,

not contracts for sale, and specifically do not contemplate an agreement by which

Aaron's agreed to finance a portion of the sale.  Accordingly, RISA is inapplicable,

and Plaintiff's RISA claims must be dismissed.[11]

I.      Plaintiff's "Violation of Retail Installment Statutes From Other
        States" (Count XI) Fails As A Matter of Law.

A named Plaintiff can only assert claims on behalf of a putative class that

the named Plaintiff has standing to assert.  *See Prado-Steiman ex rel. Prado v.

Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.2d 1476,

1483 (11th Cir. 1987) (each claim must be analyzed separately to determine if the

named plaintiff has standing to assert that claim); *see O'Shea v. Littleton*, 414 U.S.

488 (1974) (dismissing class claims where named plaintiff lacked standing).  Here,

Plaintiff, a Georgia resident, has no standing to assert a claim against Aaron's, a

Georgia corporation, under any other's state's Retail Installment Statute, when the

conduct complained of occurred solely in Georgia.  *See Healy v. Beer Inst., Inc.*,

491 U.S. 324, 336 (1989) ("the 'Commerce Clause…precludes the application of a

---

[10]   As explained above, the Lease Agreements are governed by 15 U.S.C. § 1667a, not Georgia or any other state's retail installment statute.

[11]   *See supra* § III.G.

state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State…'"). Because Plaintiff lacks standing to bring claims under any statute other than Georgia's Retail Installment and Home Solicitation Act, she cannot assert claims on behalf of a putative class under other states' retail installment statutes. *See Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (plaintiff lacking standing to bring claim in her own right could not represent class of persons raising same claims). Moreover, as explained above, the agreements between Aaron's and putative class members are leases and not sales, and therefore do not implicate Georgia or any other state's retail installment statute. Accordingly, Plaintiff's "Violation of Retail Installment Statutes From Other States" should be dismissed.

## CONCLUSION

For the foregoing reasons, Aaron's respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted, this 6th day of January, 2012.

s/ Kristine M. Brown
Kristine McAlister Brown
Georgia Bar No. 480189
Matthew D. Montaigne
Georgia Bar No. 915455

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000

Fax: (404) 881-7777
kristy.brown@alston.com
matt.montaigne@alston.com

*Attorneys for Aaron's, Inc.*

## CERTIFICATE OF COMPLIANCE WITH
## <u>LOCAL RULE 5.1</u>

I hereby certify that this **Defendant's Memorandum of Law in Support of Its Partial Motion to Dismiss Plaintiff's "Second Amended Complaint and Class Action Complaint"** was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less of 1.5 inches and a left margin of not less than 1 inch.

<u>/s/ Matthew D. Montaigne</u>

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the within and foregoing **Defendant's Memorandum of Law in Support of Its Partial Motion to Dismiss Plaintiff's "Second Amended Complaint and Class Action Complaint"** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Edward Adam Webb
eadamwebb@hotmail.com

John Louis Lyon
john@webbllc.com

Matthew C. Klase
mattklase@bellsouth.net

/s/ Matthew D. Montaigne