**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____
                                         )

JUDITH CLARK, on behalf of herself   )
and all others similarly situated,       )
                                         )

       Plaintiff,                  )        CIVIL ACTION
                                         )

v.                                 )        NO.  1:11-cv-04283-RWS
                                       )

AARON'S, INC.,                )
                                         )

       Defendant.              )
_____ )

**PLAINTIFF'S CORRECTED RESPONSE IN OPPOSITION
TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

COMES NOW Plaintiff Judith Clark, by and through her attorneys of record, to oppose the Partial Motion to Dismiss of Defendant Aaron's, Inc.

**INTRODUCTION AND PROCEDURAL HISTORY**

Ms. Clark has asserted claims in eleven counts against Defendant.  See Second Amd. Compl. (Dkt. No. 6).  Defendant has moved for dismissal of eight of these counts pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Dkt. No. 9. For the reasons shown herein, Defendant's motion should be denied.

Ms. Clark originally filed this action in the Superior Court of Fulton County Georgia.  She filed her First Amended Complaint in the Superior Court on

November 16, 2011.  <u>See</u> Dkt. No. 2.  Defendant removed the case to this Court on December 9, 2011.  <u>See</u> Dkt. No. 1.  Ms. Clark subsequently filed her Second Amended Class Action Complaint on December 20, 2011.  <u>See</u> Dkt. No. 6. Defendant filed its Partial Motion to Dismiss on January 6, 2012.  <u>See</u> Dkt. No. 9.

## ARGUMENT AND CITATION TO AUTHORITY

Defendant's Partial Motion to Dismiss is essentially predicated on a single premise – that Ms. Clark's rent-to-own agreements constitute true leases rather than credit sales coupled with a purchase money security interest.  However, Ms. Clark has pled sufficient facts to show that her agreements with Defendant are not true leases, even if they are entitled as such.  For those few defenses which do not touch upon the question of whether the agreements are credit sales or true leases, Ms. Clark has pled sufficient facts to state plausible claims for relief.  Therefore, Defendant's motion should be denied.

## I.    Standard of Review for Motion to Dismiss

For the purposes of a motion to dismiss under Federal Rule 12(b)(6), the allegations of a complaint must be accepted as true, and all reasonable inferences resolved in the plaintiffs' favor.  <u>Cottone v. Jenne</u>, 326 F.3d 1351, 1357 (11th Cir. 2003).  Federal Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has clarified that

Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Id.</u> (internal quotation marks and citation omitted). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citation omitted). The allegations in this case are more than sufficient to state claims that the Defendant has breached its contracts, acted tortiously, and violated multiple statutory provisions.

## II.   **Ms. Clark's Contracts Are Credit Sales Coupled With a Purchase Money Security Interest Instead of True Leases.**

The Federal Consumer Lease Act, relied upon in part by Defendant, explicitly recognizes that credit sales are sometimes disguised to appear as true leases. Defendant, in a footnote to its motion, partially quotes the definition of a consumer lease under federal law. Part. Mot. Dismiss, pp. 13-14 n.5. However, the full definition of a consumer lease under federal law is:

> a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $25,000,

> primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, ***except that such term shall not include any credit sale as defined in section 1602(g) of this title.***

15 U.S.C. § 1667(1) (emphasis added to the section omitted by Defendant).  The referenced statute, 15 U.S.C. § 1602(g), defines credit sales as:

> any sale in which the seller is a creditor.  The term includes any contract in the form of a bailment ***or lease*** if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

(emphasis added).  Thus federal law explicitly recognizes that certain lease transactions to consumers may well be credit sales even if they are styled as, and drafted in the form of, a lease.

Here, Ms. Clark has pled sufficient facts in her Second Amended Complaint to support a claim that her contracts are indeed credit sales.  The contracts, on their face, list the aggregate cash value of the items leased.  E.g., Sept. Contract (listing cash price of goods as $1,852.88) (Exh. A to Complaint) (Dkt. No. 1-2).  The contracts specify that, at the end of the contract, title of the items will pass free and clear from Defendant to Ms. Clark.  Id. (lease ownership provision passing title after 24 monthly payments).  The contracts list the total amount of money Ms.

Clark will have paid to Aaron's upon completion of the contract.  E.g., id. (lease

ownership provision lists total amount to acquire ownership as $3,606).  A simple

comparison of the figures in each of Ms. Clark's contracts shows that, should she

fulfill all terms, she will have paid Aaron's double or even triple the actual value of

the goods in question.  Therefore, the Court could plausibly conclude, based upon

the facts contained within her Second Amended Complaint, that her contracts are

credit sales rather than true leases because Defendant is allowing Ms. Clark to pay

over time an aggregate value in excess of the actual value of the property and, at

the end of the lease term, Ms. Clark receives title for no additional consideration.

An analysis of Georgia law leads to the same conclusion.  The Uniform

Commercial Code, as adopted by Georgia, recognizes that a contract purporting to

be a lease may, in fact, be a disguised secured transaction, and "whether a

transaction creates a lease or security interest is determined ***by the facts of each

case***."  O.C.G.A. § 11-1-201(37) (emphasis added).  The fact that a contract is

entitled a "lease" and the parties are called lessee and lessor, however, is not

dispositive.  Bill Swad Leasing Co. v. Stikes (In re Tillery), 571 F.2d 1361, 1364-

65 (5th Cir. 1978); Mejia v. Citizens & S. Bank, 175 Ga. App. 80, 81 (1985); Ford

Motor Credit Co. v. Dowdy, 159 Ga. App. 666, 667 (1981), *overruled on other*

*grounds,* 191 Ga. App. 121 (1989), *cert. denied.*  Georgia law does not require

"magic words" to create a valid security interest.  Rather, the court must refer to the general law of contracts and determine whether the parties intended to create a security agreement.  <u>United States v. Hollie</u>, 42 B.R. 111, 117 (Bankr. M.D. Ga. 1984).  The determining factor is the intention of the parties at the time the agreement was entered into as construed in light of facts and circumstances as they existed at that time.  <u>Citizens & S. Equip. Leasing, Inc. v. Atlanta Fed. Sav. & Loan Ass'n</u>, 144 Ga. App. 800, 805 (1978).  Here, Ms. Clark claims that the intent of the parties was to finance the sale of furniture to her, while Defendant claims the intent of the parties was to lease the use of furniture to Ms. Clark.  If Ms. Clark is correct, then the agreements at issue create credit sales coupled with purchase-money security interests.  If Defendant is correct, then the agreements are true leases.  Only an in-depth factual inquiry will resolve this issue and therefore dismissal of Ms. Clark's claims for civil usury, criminal usury, and violations of Georgia's Retail Installment Sales Act would be improper at this juncture.

## III.   <u>Even If the Court Finds Ms. Clark's Contracts to Be Leases Rather Than Credit Sales, They Still Constitute Retail Installment Contracts Under Georgia Law.</u>

The Federal Rules of Civil Procedure allow pleading in the alternative.  Fed. R. Civ. P. 8(a)(3); <u>also</u> O.C.G.A. § 9-11-8(e).  Defendant has not disputed in its Partial Motion to Dismiss that Ms. Clark has stated a proper claim under the Retail

Installment Sales Act if the Court finds her agreements constitute a credit sale. However, even if the Court agrees with Defendant's position that Ms. Clark's agreements are leases, her retail installment claims survive as a matter of law.

A plain reading of Georgia's Retail Installment Sales Act clearly demonstrates that rent-to-own agreements constitute retail installment contracts under Georgia law.  In Georgia, a retail installment contract is defined as:

> an instrument or instruments reflecting one or more ***retail installment transactions*** entered into in this state pursuant to which ***goods or services may be paid for in installments.***  The term includes a series of transactions made pursuant to an instrument or instruments providing for the addition of the amount financed plus the time price differential for the current sale to an existing balance.  It does not include a revolving account or an instrument reflecting a sale pursuant thereto.

O.C.G.A. § 10-1-2(a)(9) (emphasis added).  In order for Ms. Clark's contracts to qualify as retail installment contracts, they must reflect retail installment transactions, which are defined as "any transaction to ***sell or furnish*** or the ***sale of or the furnishing of goods or services*** evidenced by a retail installment contract or a revolving account."  O.C.G.A. § 10-1-2(a)(10) (emphasis added).  Thus a sale is not a requirement in order for a retail installment contract to exist.  Given these definitions, a rent-to-own agreement is a retail installment contract.

The plain language of Georgia's Lease-Purchase Act supports this interpretation. The definition of a lease-purchase agreement under Georgia law includes a critical exception:

> Lease-purchase agreements shall not include any of the following: . . .
> (e) A lease or agreement which constitutes a retail installment transaction as defined in paragraph (10) of subsection (a) of Code Section 10-1-2.

O.C.G.A. § 10-1-681(1)(E). The legislature's choice of such language explicitly shows its recognition that a rent-to-own agreement can constitute a retail installment transaction governed by the Retail Installment Sales Act.

Admittedly, the question of whether a consumer rent-to-own agreement constitutes a retail installment contract has never been addressed by Georgia courts. However, federal and state courts in other jurisdictions have regularly found that rent-to-own agreements, such as Ms. Clark's, constitute retail installment sale contracts and are therefore subject to appropriate interest rate limitations.[1] See, e.g., Perez v. Rent-a-Center, Inc., 892 A.2d 1255, 1270 (N.J. 2006); Miller v. Colortyme, Inc., 518 N.W.2d 544, 548 (Minn. 1994); Burney v.

---

[1] Unlike uniform state acts such as the Uniform Commercial Code, which generally carries the same name in every state, statutes governing retail installment sales go by differing names such as Minnesota's Consumer Credit Sales Act, Minn. Stat. Ann. § 325G.15, et seq., Wisconsin's Consumer Act, W.S.A. § 420.100, et seq., and Maine's Consumer Credit Code, Maine Rev. Stat. tit. 9-A § 1-101, et seq.

<u>Thorn Americas, Inc.</u>, 944 F. Supp. 762, 767 (E.D. Wis. 1996).  Such persuasive authority, combined with a plain reading of Georgia's statutes, supports Ms. Clark's position that her agreements with Defendant constitute retail installment contracts.  Therefore, the Court should deny Defendant's motion to dismiss Count XI of Ms. Clark's Second Amended Complaint.

**IV.   <u>Ms. Clark Has Standing to Bring Class Action Claims on Behalf of Class Members in Other States.</u>**

Ms. Clark objects to Defendant's assertions that her class claims for violations of the Retail Installment Acts of other states are premature.  Whether or not Ms. Clark has standing to represent Aaron's customers from other states is a question more appropriately handled at the class certification stage, not motion to dismiss.  However, Defendant has raised the issue and Ms. Clark addresses it briefly herein.

Numerous courts have recognized that differences in state law can be appropriately managed in a class action when the core facts are common to the class.  <u>E.g.</u>, <u>In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 315 (3d Cir. 1998); <u>In re School Asbestos Litig.</u>, 789 F.2d 996, 1010 (3d Cir. 1986); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998); <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 962 F. Supp. 450, 525 (D.N.J. 1997).  The Court need not find complete uniformity of state law, only that there

are no material conflicts among the laws.  E.g., Simon v. Phillip Morris, 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000).  Here, the core fact at issue is the interest rate or corresponding time-price differential which Defendant routinely charges consumers.  So long as other states limit the interest rate or corresponding time-price differential in a similar manner as Georgia, Ms. Clark could adequately represent their interests.  Fed. R. Civ. P. 23(a)(2) (prerequisite for plaintiff to act as class representative is a common question of law and fact between plaintiff and class members).  Numerous states have a cap greater than or equal to Georgia's. Compare O.C.G.A. § 10-1-3(d)(1) (capping interest rates at 13 percent), with Md. Code Ann., Commercial Law § 12-610(1) (capping interest rates at 22 percent for balances less than $1,000 and 18 percent for balances greater than $1,000); Mont. Code Ann. §31-1-241(1) (capping interest rates at 36 percent); Neb. Rev. Stat. § 45-338 (capping interest rates at 18 percent); 69 Pa. Cons. Stat. Ann. § 1904(b.2) (capping interest rates at 18 percent).  Ms. Clark could therefore represent class members in certain other states.  Therefore, dismissal of Ms. Clark's claims representing potential class members in other states would be premature before appropriate discovery and briefing is conducted during class certification.

**V.**   **Ms. Clark's Civil Usury Claims Should Not Be Dismissed Because She Has Pled Sufficient Facts to Show That Her Contracts Are Extensions of Credit Rather Than True Leases**

Civil usury claims require that a plaintiff satisfy four elements to succeed under Georgia law.  A plaintiff must show that:

(1) there is a loan or forbearance of money, either express or implied; (2) it is made with the understanding that the principal will be returned; (3) a greater profit than is authorized by law is agreed upon; and (4) the contract is made with an intent to violate the law.

Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1573 (11th Cir. 1985). "When the first three elements are expressed on the face of the contract, usurious intent may be presumed." Id.  Defendant has pontificated at great length that the agreements at issue are neither leases, nor forbearances of money.  Part. Mot. Dismiss, pp. 14-19.  Defendant has further disputed whether the 120-day offer constitutes a loan as matter of law.  Id. at 19-21.  Defendant, however, has not disputed that the agreements were made with the understanding that Defendant would be repaid, that the agreements conferred upon it a greater profit than authorized by law, and that the contracts were made with an intent to violate the law.  See generally Part. Mot. Dismiss.  Thus, Aaron's has conceded three of the four necessary elements for purposes of the pending motion.

The only issue left before the Court is whether Ms. Clark has pled sufficient facts to state a plausible claim that her contracts constituted a loan or forbearance

of money, either express or implied.  Ms. Clark has already briefed the Court at length on this issue by showing that her agreements constitute credit sales and retail installment transactions.  See Sections I-II, supra.  Therefore, dismissal of Ms. Clark's civil usury claims would be improper.

**VI.**    **Ms. Clark's Criminal Usury Claims Should Not Be Dismissed Because Georgia Law Explicitly Authorizes a Private Right of Action.**

Defendant erroneously argues that Ms. Clark's criminal usury claims should be dismissed because there is no civil cause of action for violations of the criminal usury statute.  This position misstates the law and directly contradicts the holdings of the Georgia Supreme Court, the Georgia Court of Appeals, and the Eleventh Circuit Court of Appeals.  Norris v. Sigler Daisy Corp., 260 Ga. 271, 271 (1990) (holding that criminal usury statute provisions apply to a civil action); First Alliance Bank v. Westover, 222 Ga. App. 524, 526 (1996) ("In a civil context, a lender who has violated the criminal usury statute may collect the principal amount of its usurious loan but forfeits its right to any interest or other fees associated with the loan"); Moore v. Comfed Sav. Bank, 908 F.2d 834, 840 (11th Cir. 1990) ("We, therefore, conclude that there was a civil action available under this section of the Code").  Ms. Clark clearly has a civil cause of action available to her for violations of Georgia's criminal usury statute.

Defendant, in support of its position that there is no private right of action for violations of the criminal statute, relies on the recent case of <u>Anthony v. American General Financial Services, Inc.</u>, 287 Ga. 448 (2010).   <u>Anthony</u> is inapposite for two reasons.   First, the complete analysis of <u>Norris</u> in <u>Anthony</u> supports Ms. Clark's position.   As the <u>Anthony</u> court explained:

> [t]he Anthonys correctly note that in <u>Murphy</u>, we cited <u>Norris</u> as an example of when strong public policy supports imposing civil, as well as criminal, liability for the violation of a penal statute. <u>See</u> <u>Murphy</u>, 282 Ga. at 201, 647 S.E.2d 54.   <u>Norris</u> is such an example, but as shown by the discussion of <u>Norris</u>'s reasoning and roots, that was ***because there was an underlying statute that expressly imposed civil liability for the usurious interest at issue.*** <u>Norris</u> should not be read to authorize the creation of an implied civil cause of action when there is nothing in the provisions of the penal statute at issue that purports to create a private cause of action.

287 Ga. at 459 (emphasis added).   Thus, the Georgia Supreme Court recognized that <u>Norris</u> is limited to its holding that a civil cause of action exists for violations of the criminal usury statute, and that <u>Norris</u> did not stand for the general proposition that every criminal statute automatically created a corresponding civil cause of action.   Until the Supreme Court of Georgia overrules <u>Norris</u>'s narrow holding that a private right of action exists for violations of Georgia's criminal usury statute, the <u>Norris</u> holding remains good law.

Second, the analysis in <u>Anthony</u> of the holding of <u>Norris</u> is dicta.   In <u>Anthony</u>, the Eleventh Circuit certified the question "[i]f a corporation employing

notaries public is subject to O.C.G.A. section 45-17-11, does a private civil cause of action arise under that section to recover notarial fees paid in excess of, and without notice of, the statutorily-prescribed maximum notary fee?"  287 Ga. at 454.  The Georgia Supreme Court held that it did not.  Id. at 459.  In reaching this conclusion, the court discussed Norris at length due to Anthony's argument by analogy that Norris stood for a general proposition that criminal statutes implicitly create private rights of action.  Id. at 457-59.  For these reasons, dismissal of Ms. Clark's criminal usury claims would be improper.

## VII. **Ms. Clark Has Pled Sufficient Facts to State a Plausible Claim of Unconscionabilty.**

Defendant has not only blatantly misstated Georgia's unconscionability law, but has also misread Ms. Clark's Second Amended Complaint.  The Court should deny Defendant's request to dismiss Ms. Clark's unconscionability claims.

Defendant maintains that Ms. Clark must plead sufficient facts to support findings of both procedural and substantive unconscionability.  In support of this, Defendant cites to a footnote in NEC Technologies v. Nelson, 267 Ga. 390 (1996). However, the full footnote describes the law of other states, not Georgia:

> Research supports the statement made in Fotomat Corp. of Fla. v. Chanda, supra, 464 So.2d at 629, that [m]ost courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain

>   quantum of procedural plus a certain quantum of substantive
>   unconscionability.

Id. at 394 n.6.  While commenting on the law of "most courts," the footnote does

not address the views of Georgia courts.  In fact, the Supreme Court of Georgia

explicitly withheld ruling on whether procedural unconscionability is a

requirement under Georgia law.  Id. at 394 ("We pretermit the issue whether the

lack of procedural unconscionability in this case is determinative of the

unconscionability issue because we conclude that there is likewise an absence of

evidence to support a finding of substantive unconscionability").  Thus, while

Georgia recognizes both procedural and substantive unconscionability – e.g., Dale

v. Comcast, 498 F.3d 1216, 1219 (11th Cir. 2007) ("Georgia law recognizes

procedural and substantive unconscionability") – no Georgia decision has

addressed the issue of whether both are required.  Nevertheless, to the extent that

this Court requires both procedural and substantive unconscionability, Ms. Clark

has pled in detail sufficient facts to support findings of both.

Defendant incorrectly characterizes Ms. Clark's unconscionability claims as

a "threadbare" recital of the legal standard for unconscionability.  See Part. Mot.

Dismiss, p. 12.  This is simply not true.  In determining whether a contract is

procedurally unconscionable under Georgia law, courts evaluate many factors,

including "age, education, intelligence, business acumen and experience of the

parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." NEC, 267 Ga. at 392. These factors go toward the "process of making [a] contract, while substantive unconscionability looks to the contractual terms themselves." Dale, 498 F.3d at 1219. Ms. Clark has repeatedly pled facts which go to the very heart of the question of procedural unconscionability. Second Amd. Compl., ¶¶ 7-8, 14-16, 60-61 (describing boilerplate terms, the coercion experienced by Ms. Clark in "renewing" her contracts, and the disparity in bargaining power between the parties).

With respect to substantive unconscionability, Georgia "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties." NEC, 267 Ga. at 392. Ms. Clark has alleged that several provisions of the Aaron's contracts are unconscionable. Second Amd. Compl. at ¶¶ 15-16 (crediting payments to her account in an undisclosed manner), 62 (imposing illegally high interest rates). These factual allegations are sufficient at this early stage to support a claim of unconscionability. For example, in the case of In re Checking Account Overdraft Litigation, 694 F. Supp. 2d 1302 (S.D. Fla. 2010), the court held that the plaintiffs sufficiently pled procedural unconscionability by alleging the adhesive

nature of boilerplate contracts and the disparity in sophistication and bargaining power between the parties.  Id. at  1321.  Further, the plaintiffs sufficiently pled that reordering the posting order of debit card transactions from chronological order to high-to-low order was substantively unconscionable.  Id.  Whether the Court or jury will eventually embrace Plaintiff's claims is irrelevant at this early stage.  Id. at 1321 n.10.  Therefore, dismissal of Ms. Clark's unconscionability claim would be improper.

## VIII.  Ms. Clark's Unjust Enrichment Claim Is an Acceptable Plea in the Alternative.

Federal Rule 8(d) permits plaintiffs to plead alternative claims, even if the alternative claims are inconsistent.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth 2 or more statements of a claim or defense alternatively or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency'") (quoting Fed. R. Civ. P. 8).  Ms. Clark has pled claims for unjust enrichment in the alternative and, as a result, has properly exercised her pleading rights under Rule 8(d).  Cleveland, 526 U.S. at 805.

Defendant argues that the existence of written agreements mandates dismissal of the unjust enrichment claims even though such claims are pled in the

alternative.   Part. Mot. Dismiss, pp. 9-11.   This Court recently rejected the

*identical* argument in WESI, LLC v. Compass Environmental, 509 F. Supp. 2d

1353, 1362-63 (N.D. Ga. 2007), explaining:

> A claim for unjust enrichment is not a tort, but an alternative theory of
> recovery if a contract claim fails.  The theory of unjust enrichment
> applies when there is no legal contract and when there has been a
> benefit conferred which would result in an unjust enrichment unless
> compensated.   Other district courts have held, however, that
> dismissing an equitable count, even at the summary judgment state, is
> not appropriate merely because a claimant is prohibited from Georgia
> law from recovering under a breach of contract theory and an unjust
> enrichment theory . . . The claimant cannot recover under both legal
> and equitable claims but will be required at trial to elect under which
> of these remedies it wishes to proceed.   Defendants allege that
> Plaintiffs unjust retained the AGL payment to their detriment.   The
> Court finds that Defendants currently are entitled to assert an unjust
> enrichment claim alternative to their breach of contract claim under
> the Agreement, though they cannot recover under both theories.

(internal citations omitted); also Abels v. JPMorgan Chase Bank, N.A., 2009 WL

5342768, at *4 ("Defendant has not conceded that the Plaintiffs are entitled to

recover under the contract, and it is possible that if their contractual claims fail,

Plaintiffs may still be entitled to recovery under the unjust enrichment count . . .

Therefore, the unjust enrichment count should not be dismissed at this point");

Manicini Enters., Inc. v. American Express Co., 236 F.R.D. 695, 699 (S.D. Fla.

2006) ("Plaintiff should be permitted to plead alternative equitable claims for relief

as the existence of express contracts between the Parties has yet to be proven");

Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc., 982 F. Supp. 873, 880 (S.D. Fla. 1997) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment . . . is premature").  The existence of a valid express contract has been alleged but not proven, and the Court may well find that no valid express contract exists – for example, due to unconscionability.  While Ms. Clark may eventually have to choose between her express breach of contract theory and her unjust enrichment theory, dismissal of her unjust enrichment claim at this stage is premature.

Defendant relies on White v. Wachovia Bank, N.A., 563 F. Supp. 2d 1358 (N.D. Ga. 2008), and American Casual Dining v. Moe's Southwest Grill, LLC, 426 F. Supp. 2d 1356 (N.D. Ga. 2006), in support of its position.  White is distinguishable from this case because there the plaintiffs "[e]ffectively claim[ed] that there was a contract and that Wachovia was unjustly enriched within a single count," 563 F. Supp. 2d at 1371-72, rather than in alternative counts as pled here and in WESI.  Equally unpersuasive is Defendant's reliance on American Casual Dining, because this Court explicitly distinguished that case in WESI, wherein the Court explained that:

> In Am. Casual Dining, the court noted while "it is permissible to assert alternative and inconsistent claims, [a claimant] cannot claim *within a single count* that there was an agreement and that [the

claimant] was unjustly enriched."  In this case, Defendants' count of unjust enrichment does not suffer from this internal inconsistency.

WESI, 509 F. Supp. 2d at 1363 n.12 (internal citations omitted).  Like WESI, and unlike American Casual Dining, Ms. Clark has pled unjust enrichment in a separate count from her express breach of contract claims.  Dismissal would be premature simply because an express contract exists where Plaintiff may be entitled to recovery under her unjust enrichment claim if her contractual claim fails.  Therefore, the Court should allow Ms. Clark to proceed with her claim for unjust enrichment.

## IX.    **Ms. Clark Has Properly Pled Her False Advertising Claims.**

As an initial matter, Ms. Clark notes that the courts have not addressed the issue of whether monetary damages are authorized under Georgia's False Advertising Statute.  O.C.G.A. § 10-1-420, *et seq.*  Defendant is correct that Georgia's False Advertising Statute authorizes injunctive relief.  O.C.G.A. § 10-1-423.  However, the statute specifically states that parties "in violation" of the Act "may be enjoined" without comment on other available remedies.  Id.  That the statute specifically authorizes one type of relief does not automatically preclude others.  However, even if the Court finds that the Act only provides for injunctive relief, Ms. Clark's claims still survive dismissal.

As a matter of law, an injunction is a form of equitable relief.  O.C.G.A. § 9-5-1 (describing generally the equitable relief of injunction).  In Ms. Clark's Second Amended Complaint, she specifically prayed for "such other and further relief as the Court may deem just and ***equitable***."  Second Amd. Compl., p. 30 (emphasis added).  That Defendant now attempts to assert that Ms. Clark has not asked the Court for equitable relief is absurd.

Defendant also attempts to create a pleading standard which does not exist. Defendant claims Ms. Clark must allege in her Complaint that she has no adequate remedy at law and relies on State Road & Tollway Authority v. Electronic Transaction Consultants Corp., 306 Ga. App. 487 (2010), in support.  State Road, however, does not address the pleading standards for claims for injunctive relief, but instead articulates the standard the Court must use for deciding whether or not to enter an injunction after considering all relevant evidence.  Id. at 488 ("Entry of a permanent injunction is appropriate [only] in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without an adequate remedy at law").  The question at a motion to dismiss stage is not whether Ms. Clark can meet her evidentiary burden, but whether she has articulated sufficient facts that, accepted as true, would entitle her to relief.  Iqbal, 129 S. Ct. at 1949.

Here, Ms Clark has pled sufficient facts to meet her burden.  For example, she has pled, in detail, the nature and terms of the "120-day offer."  Second Amd. Compl., ¶ 6.  She has pled that Defendant has no intention of honoring the offer it makes, describing in detail how Defendant precludes acceptance of the offer.  Id. at ¶ 33.  Such facts, taken as true, would allow Ms. Clark to pursue injunctive relief on behalf of the class.  O.C.G.A. § 10-1-423.  Whether such relief would be a negative injunction directing Defendant to discontinue the 120-day offer, a positive injunction mandating Defendant to provide customers with regular statements and payoff amounts, or other appropriate relief is premature on motion to dismiss. Therefore, Ms. Clark should be allowed to proceed with her false advertising claim.

## X.   Ms. Clark's Claims of Good Faith and Fair Dealing Should Not Be Dismissed.

Dismissal of Ms. Clark's good faith and fair dealing claim would be error. Rule 8 of the Federal Rules of Civil Procedure places no technical form on pleadings, save that they be simple, concise, direct and provide a party with notice of the claims.  Fed. R. Civ. P. 8(d); Thomson v. Washington, 362 F.3d 969, 970 (7th Cir. 2004) ("The federal rules replaced fact pleading with notice pleading"). Ms. Clark's Complaint provides Defendant notice for the grounds to which Ms. Clark seeks relief for breach of contract.   Aaron's fixates on the notion that

Georgia does not recognize breaches of the duty of good faith and fair dealing separately from express breaches of contract, see Stuart Enters. Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 234 (2001), and essentially claims that Ms. Clark is seeking an improper double recovery.  Part. Mot. Dismiss, p. 7 ("Plaintiff alleges the exact same conduct in support of her claim for breach of good faith and fair dealing and her claim for breach of contract"); e.g., Marvin Nix Dev. Co. v. United Community Bank, 302 Ga. App. 566, 568 (2010) ("While a party may pursue inconsistent remedies, he is not permitted a double recovery of the same damages for the same wrong.  He is entitled to only one satisfaction of the same damages, in either contract or tort") (internal citations omitted).  All of Aaron's breaches are based on the contracts.  Some derive from Aaron's failure to adhere to express terms of the contracts, such as providing zero percent financing for 120-days. Second Amd. Compl., ¶ 6 (terms of the 120-day same as cash offer); October Contract, p.3 (providing 120-days to purchase at either the "Everyday Low Cash Price" or the "Advertised Special Price") (Exhibit B to Complaint) (Dkt. No. 1-3). Some are the result of Aaron's active attempts to bar Ms. Clark's performance under the contract.  Walker v. Gwinnett Hosp. Sys., Inc., 263 Ga. App. 554, 558 (2003) ("The implied duty doctrine requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's

performance").  For example, Aaron's not only refused to tell Ms. Clark how much she owed, but also linked fulfillment of the 120-day offer to execution of a separate agreement in March of 2011. Second Amd. Compl., ¶¶ 12 (refusing to provide payoff amount), 14-16 (linking fulfillment of the 120-day offer to a new contract). Obviously, Ms. Clark is entitled to pursue all such breaches of the parties' contracts.  She cannot be forced to limit herself to challenging one phrase in multiple contracts.

Furthermore, and once again, Ms. Clark is allowed to plead alternative counts that Defendant expressly breached the contract in multiple ways.  Fed. R. Civ. P. 8(d).  Here, Ms. Clark has pled that Defendant not only breached the express terms of the contract, but did so in a manner that also breached the duty of good faith and fair dealing that Defendant owed to Ms. Clark.  Second Amd. Compl., Count IV & V.  Thus, while Ms. Clark may not be allowed to recover under both theories *as to the same provision of the contracts*, she should be allowed to plead both theories in order to provide Defendant with notice of the ways in which Ms. Clark asserts Defendant breached its contract.  Thus, dismissal of Ms. Clark's good faith and fair dealing claims would be inappropriate and she should be allowed to proceed.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's partial motion to Dismiss.  Ms. Clark has pled sufficient factual matter to show the Court that her contracts are in fact credit sales coupled with a purchase money security interest in the goods in question rather than true leases.  Such a position is clearly supported by federal and Georgia law.  Even if the Court were to find that Ms. Clark's agreements were true leases rather than disguised credit sales, Ms. Clark is still allowed to pursue her Retail Installment Sales Act claims under Georgia law and, as class representative, under the laws of other states with similar statutory provisions.  Further, Ms. Clark has pled sufficient facts to show that she may well be entitled to relief based on unjust enrichment, unconscionability, and false advertising.  Finally, Defendant's effort to ignore the multitude of contractual provisions at issue – in order to limit Ms. Clark to challenging one phrase under one legal theory – is wholly at odds with modern pleading standards.  The Partial Motion to Dismiss should be denied in its entirety.

DATED this 20th day of January, 2012.

Respectfully submitted,

BY:  WEBB, KLASE & LEMOND, LLC

 /s/ E. Adam Webb
E. Adam Webb
 Georgia State Bar No. 743910
Matthew C. Klase
 Georgia State Bar No. 141903
John L. Lyon
 Georgia State Bar No. 833001

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 444-0271 (fax)

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that the foregoing was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

 /s/ John L. Lyon
John L. Lyon

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing upon counsel of record electronically through the Court's electronic filing system, which automatically provided a copy to:

Kristine M. Brown, Esq.
Matthew D. Montaigne, Esq.
Kristy.Brown@alston.com
Matt.Montaigne@alson.com

DATED this 20th day of January, 2012.

 /s/ John L. Lyon
John L. Lyon