**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JUDITH CLARK, on behalf of herself and all others similarly situated, | : : : | |
| | : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:11-CV-04283-RWS |
| v. | : : | |
| AARON'S, INC., | : : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Defendant Aaron's, Inc.'s

("Defendant") Partial Motion to Dismiss Plaintiff's "Second Amended

Complaint and Class Action Complaint" ("Def.'s Partial Mot. to Dismiss") [9].

After reviewing the record, the Court enters the following Order.

## Background

Plaintiff Judith Clark ("Clark") initiated this litigation in the Superior

Court of Fulton County, raising various claims stemming from Defendant's

alleged failure to allow her to take advantage of a "120 day same as cash offer"

(the "120-day offer") contained in several contracts between the parties for the

lease[1] of several items of household furniture.  (Compl., Dkt. [1].)  Defendant

timely removed the action to this Court on the basis of diversity of citizenship

(Notice of Removal, Dkt. [1]) and now moves to dismiss eight of Plaintiff's

eleven claims for failure to state a claim upon which relief may be granted,

pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Def.'s Partial

Mot. to Dismiss, Dkt. [9] at 1-2.)

The facts underlying this case are as follows.[2]  On September 30, 2010,

Clark entered into a contract with Defendant "for the purchase of a bedroom set"

(the "September Bedroom Contract").  (Second Am. Compl. and Class Action

Compl. ("Second Am. Compl."), Dkt. [6] ¶ 9.)  This contract included "a 120-

day offer to purchase [the] bedroom set at the 'Cash Price' listed in the

contract."[3]  (Id.)  On October 7, 2010, Clark entered into another contract with

---

[1] The nature of the contracts at issue is disputed by the parties, and in opposition to Defendant's motion to dismiss, Clark disputes that the contracts constitute "leases."  (Second Am. Compl., Dkt. [6] ¶ 8.)  Throughout the Complaint, however, Clark refers to the contracts as "leases."  Thus, for purposes of this Background section, the Court does so as well, in keeping with the terminology used by Clark in the Complaint.  In doing so, the Court does not rule that the contracts in fact constitute "leases."

[2] Because the case is before the Court on a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint.  Cooper v. Pate, 378 U.S. 546, 546 (1964).

[3] Clark appears to be referring to following provision, contained in an addendum to certain of the contracts between the parties:

Defendant for two pieces of furniture that Defendant failed to include in the September Bedroom Contract (the "October Bedroom Contract"). (Id. ¶ 10.) The October Bedroom Contract also included the 120-day offer. (Id.) On November 6, 2010, Clark entered into a third contract with Defendant for the purchase of a living room set (the "November Living Room Contract"), which contract also included the 120-day offer. (Id. ¶ 11.)

At the beginning of January 2011, Clark requested that Defendant mail her a payoff statement showing the remaining amount due on her account so she could take advantage of the 120-day offer. (Id. ¶ 12.) Defendant refused to mail her a statement or provide her with a payoff amount on the telephone. (Id.) Clark alleges that Defendant's representatives told her that "they could not modify her account or allow her to pay it off unless and until she renewed her lease for another six months." (Id. ¶ 14.) Therefore, on March 31, 2011, Clark

---

120-Day Same As Cash: If my payments are current, within 120 days of the Agreement Date, I may choose to purchase the Leased Property by paying either the Everyday Low Cash Price or the Advertised Special Price, whichever is lower, less the Lease portion of all previous payments (the Amount Due at Lease Signing, Monthly and Semi-monthly Payments less Aaron's Service Plus Fees and Sales/Use Taxes), plus any other Fees and Applicable Sales/Use Tax. I understand that Preferred Customer Coupons and New Agreement Discounts may not be used toward the Purchase Price. I may Exercise this option through the first 120 days.

(Compl. Ex. B, Dkt. [1] at 4.)

renewed and consolidated the September Bedroom Contract and October Bedroom Contract into a new six month lease (the "March Bedroom Renewal Contract"). (Id. ¶ 13.) Clark also renewed the November Living Room Contract "for another six months" (the "March Living Room Renewal Contract").[4] (Id. ¶ 14.)

After renewing these leases, the store manager told Clark that the district manager would come to the store the following day and "correct her account at that time to allow for the payoff amount to be tendered by crediting her new leases with all the payments from the previous leases." (Id. ¶ 15.) Clark called the following day and was told that the district manager had not come to the store but would work on her account the following week. (Id.) Clark called the following week and was told the district manager still had not come in. (Id.)

---

[4] All of the contracts between Defendant and Clark were for a "Lease Term" of six months, and Clark had the option to make either monthly or semi-monthly payments. (Compl. Ex. A-E, Dkt. [1] at 1). In addition to the 120-day offer to purchase the leased items at the "Cash Price," the contracts contain two other purchase options. Under the "Early Purchase" option, Clark could obtain ownership of the leased items "[b]y paying, at any time, an amount equal to the Cash Price Less 50% of the Lease Payment portion of all previous payments . . . plus any other fees due and sales tax." (Id.) Under the "Lease Ownership" option, Clark could obtain ownership of the leased items by paying monthly or semi-monthly payments for the term required by the "Lease Ownership Plan." (Id.) The total amount of all payments required under the "Lease Ownership" provision is termed the "Total Amount to Acquire Ownership," which amount varies slightly depending on whether payments are made monthly or semi-monthly. (Id.)

4

Defendant never corrected Clark's account or provided her with a payoff amount to take advantage of the 120-day offer. (Id. ¶ 16.) As a result, "[Clark] has paid much more than she should have and yet still does not own the furniture at issue." (Id.)

Based on the foregoing allegations, Clark filed an eleven-count Second Amended Complaint and Class Action Complaint against Defendant. Defendant now moves to dismiss eight of those counts for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (See generally Def.'s Partial Mot. to Dismiss, Dkt. [9].) The Court sets out the legal standard governing a Rule 12(b)(6) Motion to Dismiss before considering Defendant's motion on the merits.

## Discussion

## I.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to

5

withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the Complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the Complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II.    Analysis

As stated in the Background section, supra, Defendant moves to dismiss eight of the eleven Counts of the Second Amended Complaint. In particular, Defendant moves to dismiss the following: Count II (False Advertising), Count V (Breach of Good Faith and Fair Dealing), Count VI (Unjust Enrichment), Count VII (Unconscionability), Count VIII (Civil Usury), Count IX (Criminal

6

Usury), Count X (Georgia's Retail Installment and Home Solicitation Sales Act ("RISA")), and Count XI (Violation of Retail Installment Statutes from Other States). Using the legal standard articulated above, the Court considers Defendant's motion as to each Count.

A.    Count II (False Advertising)

In Count II, Clark alleges that Defendant engaged in false advertising in violation of O.C.G.A. § 10-1-420, which provides that "[n]o person, firm, or corporation shall offer for sale merchandise . . . with intent, design, or purpose not to sell the merchandise . . . so advertised or offered for sale at the price or upon the terms stated therein or otherwise communicated . . . ." O.C.G.A. § 10-1-420(a). Clark alleges that Defendant violated this provision by advertising "its willingness to provide consumer furniture, appliances, and electronics to [Clark] pursuant to the terms of the 120-day offer" when Defendant "[did] not intend to actually provide its goods and services to [Clark] pursuant to the 120-day offer . . . ." (Second. Am. Compl., Dkt. [6] ¶¶ 32-33.)

In support of Defendant's motion to dismiss this Count, Defendant argues that a claimant is entitled only to injunctive relief for a violation of O.C.G.A. § 10-1-420 and that, because she has failed to seek injunctive relief in her Complaint, Clark has failed to state a claim for false advertising under this

7

provision. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 6.) Defendant also argues

that Clark has failed to allege that her remedies at law are inadequate and that

she therefore is not entitled to injunctive relief. (Id.) Clark, on the other hand,

argues that injunctive relief is not the exclusive remedy for violations of the false

advertising law and, in any event, that she properly has requested injunctive

relief in her concluding prayer for relief. (Pl.'s Resp. in Opp'n, Dkt. [11] at 20-

21.) She further argues that at the motion to dismiss stage, she need not allege

that her legal remedies are inadequate to state a claim for injunctive relief. (Id.

at 21-22.)

O.C.G.A. § 10-1-423 provides that any "person, firm, or corporation" that

has engaged in false advertising in violation of § 10-1-420 "may be enjoined."

The Court agrees with Defendant that under this provision, the exclusive remedy

for a violation of Georgia's false advertising law is injunctive relief.[5] To obtain

injunctive relief, it is well-settled that a plaintiff must demonstrate that her

remedies at law are inadequate. See, e.g., Deerskin Trading Post, Inc. v. United

---

[5] As stated above, Clark argues, to the contrary, that while the statute provides
that persons "may" be enjoined from false advertising, it does not provide that
injunctive relief is the exclusive remedy. This argument fails. Under the well-
established canon of statutory construction "inclusio unius, exclusio alterius," the
inclusion of one implies the exclusion of the other. Davis v. Wallace, 713 S.E.2d 446,
450 (Ga. Ct. App. 2011). Thus, the statute's specific mention of injunctive relief
impliedly excludes other remedies for violations of the false advertising law.

Parcel Service of America, Inc., 972 F. Supp. 663, 673 n.10 (N.D. Ga. 1997) ("[T]he Court finds that Plaintiff has an adequate remedy at law—compensatory damages; thus, Plaintiff's claim for injunctive relief lacks merit as a matter of law and is dismissed.").

The Court agrees with Defendant that based on the facts alleged in the Second Amended Complaint, compensatory damages would be adequate to remedy any violation of law that Clark may establish. Accordingly, Clark would not be entitled to injunctive relief. As injunctive relief is the exclusive remedy permitted for violations of Georgia's false advertising law, Clark has failed to state a claim for relief. Defendant's Partial Motion to Dismiss therefore is **GRANTED** as to Count II.

### B.    Count V (Breach of Good Faith and Fair Dealing)

In Count V of the Complaint, Clark alleges that Defendant breached the implied covenant of good faith and fair dealing by refusing to provide her with the information needed to take advantage of the 120-day offer. (Second Am. Compl., Dkt. [6] ¶ 48). Defendant argues that this Count is due to be dismissed because it is duplicative of Clark's "concurrently alleged breach of contract claim," set out in Count IV. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 7.) To this end, Defendant points out that the same conduct alleged as the basis for

9

Clark's breach of contract claim is alleged in support of her claim for breach of the covenant of good faith and fair dealing.[6]  (Id.)

In Georgia, "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement."  Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc., 662 S.E.2d 745, 748 (Ga. Ct. App. 2008).  This implied covenant cannot be breached independently of "the contract provisions it modifies."  Id.  As the Eleventh Circuit has explained:

> [The implied covenant of good faith and fair dealing] is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure.  But it is not an undertaking that can be breached apart from those terms.

Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (citations omitted).  Thus, to state a claim for breach of the implied duty of good faith and fair dealing, "a plaintiff must set forth facts showing a breach of an

---

[6]  (Compare Second Am. Compl., Dkt. [6] ¶ 48 (Count V, Breach of good faith and fair dealing) ("By refusing to provide [Clark] with the information she needed to fulfill the 120-day same as cash offer, Defendant actively undermined [her] opportunity to receive the benefit of her bargain."), with id. ¶ 43 (Count IV, Breach of contract) ("To evade the terms of the 120-day offer, Defendant regularly engages in behavior . . . . [s]uch [as] . . . refusing to provide the customer with payment information related to their accounts, refusing to mail account information, and refusing to take payment in any manner other than at the store location.").)

actual term of an agreement." <u>Am. Casual Dining, LP v. Moe's Sw. Grill, LLC</u>, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (citations omitted).

The foregoing authority does not support Defendant's argument that the causes of action for breach of the implied covenant and breach of contract are "duplicative"; on the contrary, the causes of action are separate and distinct and may be pled simultaneously. The foregoing authority merely establishes the principle that to state a claim for breach of the implied covenant, the plaintiff must be found to have stated a claim for breach of contract (since the implied covenant cannot be breached independently of an express contract term). <u>See, e.g.</u>, <u>TechBios, Inc. v. Champagne</u>, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009) (denying motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing after finding that plaintiff had stated a claim for breach of contract); <u>see also</u> <u>Benjamin v. BAC Home Loans Servicing, LP</u>, No. CV 211-101, 2012 WL 1067999, at *5 (S.D. Ga. Mar. 29, 2012) (denying motion to dismiss as to both breach of contract claim and separately alleged claim for breach of the implied covenant of good faith and fair dealing). In accordance with the foregoing, Defendant's Partial Motion to Dismiss is **DENIED** as to Count V.

AO 72A
(Rev.8/82)

## C.    Count VI (Unjust Enrichment)

In Count VI, Clark raises a claim for unjust enrichment, alleging that Defendant would be unjustly enriched if allowed to keep the fees and payments it extracted from her through the "improper conduct alleged [in the Complaint]." (Second Am. Compl., Dkt. [6] ¶ 53.)  Defendant moves to dismiss this Count on grounds that Clark cannot state a claim for unjust enrichment because the rights and responsibilities of the parties are governed by express contracts, the existence of which precludes Clark from claiming unjust enrichment.[7]  (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 9.)  In response, Clark points out that the Federal Rules of Civil Procedure allow parties to plead alternative and inconsistent claims and that she has brought her claim for unjust enrichment in the alternative to her claims for breach of contract and breach of the implied

---

[7] Defendant also argues that Clark has failed to allege that she did not receive the benefit of the use of the leased items and therefore has failed to allege an essential element of her claim.  (See Def.'s Partial Mot. to Dismiss, Dkt. [9] at 11 ("[Clark's] allegations make clear that she received value in the form of use of the leased merchandise in exchange for her payments to [Defendant].  Because Clark received value in exchange for her payments to [Defendant], [Defendant] was not unjustly enriched . . . .").)  Defendant appears to misunderstand Clark's claim. Clark alleges that she paid Defendant a benefit in the form of payments and fees that she would not have had to pay, had Defendant not prevented her from taking advantage of the 120-day offer.  It is this benefit that Clark alleges would leave Defendant unjustly enriched if she were not compensated.  (See Second Am. Compl., Dkt. [6] ¶ 16 (alleging that because Defendant "refused to provide her a payoff amount under the original 120-day offer," she "has paid much more than she should have").)

covenant of good faith and fair dealing.  (Pl.'s Resp. in Opp'n, Dkt. [11] at 17; Second Am. Compl., Dkt. [6] ¶ 52.)

Under Georgia law, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated."  <u>Smith Serv. Oil Co. v. Parker</u>, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001).  Thus, the essential elements of the claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust.

The Court finds that Clark has stated a claim for unjust enrichment, which she has pled in the alternative to her claim for breach of contract.  While a party, indeed, cannot <u>recover</u> under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative.  <u>See</u> <u>Abels v. JPMorgan Chase Bank, N.A.</u>, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) ("Defendant is correct in that Plaintiffs will not be permitted to <u>recover</u> on both theories, but at this point it would be <u>premature to dismiss</u> the unjust enrichment count simply because an express contract exists.  Defendant has not conceded that that [sic] Plaintiffs are entitled to recovery under the contract, and it is

13

possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under the unjust enrichment count.") (emphasis added).

Defendant cites <u>American Casual Dining</u> in support of its argument that an unjust enrichment claim cannot be pled in the alternative to a breach of contract claim when an express contract exists. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 10.) In <u>American Casual Dining</u>, the court noted that a plaintiff may "assert alternative and inconsistent claims," but held that a plaintiff could not "claim <u>within a single count</u> that there was an agreement and that the [defendant] was unjustly enriched." 426 F. Supp. 2d at 1372 (emphasis added). In this case, however, Clark has pled her breach of contract claim in a separate count, and, therefore, the Second Amended Complaint does not suffer from the "internal inconsistency" that was present in <u>American Causal Dining</u>. See <u>Wesi, LLC v. Compass Envtl., Inc.</u>, 509 F. Supp. 2d 1353, 1363 & n.12 (N.D. Ga. 2007) (finding that defendants were entitled to assert counterclaim for unjust enrichment in the alternative to breach of contract because their counterclaim did not suffer from the "internal inconsistency" of "'claim[ing] <u>within a single count</u> that there was an agreement and that [the claimant] was unjustly enriched'") (quoting and distinguishing <u>American Causal Dining</u>, 426 F. Supp. 2d at 1372).

AO 72A
(Rev.8/82)

Similarly, courts have held that a plaintiff may not plead an unjust enrichment claim in the alternative to a claim for breach of contract when it is undisputed (or when the court has found) that a valid contract exists. See Tidkis v. Network for Med. Commc'ns & Research, LLC, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) ("Here, any benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither [the plaintiff] nor the defendants challenge.") (emphasis added); Bogard v. Inter-State Assurance Co., 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) (affirming trial court's grant of defendant's motion for judgment on the pleadings because plaintiff's unjust enrichment claim was precluded by existence of legally valid contract). In this case, contrary to those cited immediately above, Clark has disputed the validity of the contracts at issue by alleging that they are void as unconscionable and in violation of statutory law. Accordingly, there being no impediment to her pleading a claim for unjust enrichment in the alternative to her contract claims, Defendant's Partial Motion to Dismiss is **DENIED** as to Count VI.

D.    Count VII ("Unconscionability")

In Count VII, Clark alleges that "all or portions" of her contracts with Defendant are unconscionable. (Second Am. Compl., Dkt. [6] ¶ 63.) Defendant moves to dismiss this Count, arguing, among other things, that Clark has failed

15

to allege sufficient factual matter to state a plausible claim. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 12-13.) As a threshold matter, Defendant argues that Georgia courts require a finding of both procedural and substantive unconscionability. (Id. at 11-12.) Defendant contends that Clark has failed to make a plausible showing of either, and, moreover, has failed to identify which provisions of the contracts are alleged to be unconscionable. (Id. at 12-13.) Defendant points out that Clark has alleged, only generally, that "[a]ll or portions of [Defendant's] contracts are unconscionable" and that "[t]he Court should determine what aspects of the contracts are unconscionable." (Id. at 12 (citing Second Am. Compl., Dkt. [6] ¶¶ 63-64).)

In response, Clark first argues that Georgia law does not require a showing of both procedural and substantive unconscionability to state a plausible claim, but that, in any event, she has alleged sufficient facts to show both. (Pl.'s Resp. in Opp'n, Dkt. [11] at 15.) She argues that she has pled sufficient factual matter to show procedural unconscionability by "describing boilerplate terms, the coercion experienced by [her] in 'renewing' her contracts, and the disparity in bargaining power between the parties." (Id. at 16 (citing Second Am. Compl., Dkt. [6] ¶¶ 7-8, 14-16, 60-61).) She argues that she has sufficiently pled substantive unconscionability by alleging that Defendant

"credit[ed] payments to her account in an undisclosed manner" and "impos[ed] illegally high interest rates."  (Id.)

For a contract to be found unconscionable under Georgia law, there generally must be both procedural and substantive unconscionability.  See, e.g., NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 773 n.6 (1996) ("[T]o tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability."); Gordon v. Crown Cent. Petroleum Corp., 423 F. Supp. 58, 61 (N.D. Ga. 1976) (holding unconscionability to require both "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party").  In assessing procedural unconscionability, courts consider factors such as "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice."  NEC Techs., 478 S.E.2d at 771-72 (citations omitted).  To determine substantive unconscionability, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the contract terms, the allocation of

17

risks between the parties and similar public policy concerns." Id. at 772 (citations omitted).

Georgia law sets a high bar for the finding of unconscionability. As the Georgia Supreme Court has explained, "[a]n unconscionable contract is such an agreement as no sane man not acting under a delusion would make, and that no honest man would take advantage of." R. L. Kimsey Cotton Co., Inc. v. Ferguson, 214 S.E.2d 360, 363 (1975) (internal quotation marks and citation omitted). Similarly stated, "[u]nconscionable conduct must 'shock the conscience.'" Mitchell v. Ford Motor Credit Co., 68 F. Supp. 2d 1315, 1318 (N.D. Ga. 1998) (quoting BMW Fin. Servs., N.A. v. Smoke Rise Corp., 486 S.E.2d 629 (Ga. Ct. App. 1997)).

The Court finds that Clark's unconscionability claim fails as a matter of law. In support of her argument for procedural unconscionability, Clark alleges she was coerced into renewing her contracts through false promises that, by doing so, she would be able to take advantage of the 120-day offer. The Court notes that at the motion to dismiss stage of the litigation, this allegation may be sufficient to show procedural unconscionability, as it suggests an absence of meaningful choice on the part of Clark in entering into the contracts.

AO 72A
(Rev.8/82)

Despite the foregoing, however, Clark has failed to allege sufficient factual matter to show substantive unconscionability, which failure ultimately is fatal to her claim. As stated above, an unconscionable contract is one that "no sane man not acting under delusion would make"; it is one the performance of which would "shock the conscience." Clark contends this high standard has been satisfied through allegations that Defendant "credit[ed] payments to her account in an undisclosed manner" and "impos[ed] illegally high interest rates." (Pl.'s Resp. in Opp'n, Dkt. [12] at 16 (citing Second Am. Compl., Dkt. [6] ¶¶ 15-16, 62).) For example, Clark alleges that "[Defendant] refused to correct the errors on [her] account, refused to provide her a payoff amount under the 120-day offer, and refused to honor its prior promises." (Second Am. Compl., Dkt. [6] ¶ 16.)

The foregoing allegations, however, do not pertain to the actual terms of the contracts but rather to Defendant's alleged performance of the contracts. As such, the allegations say nothing regarding the substance of the contract and thus could not support a finding of substantive unconscionability. The Court also notes that Clark has not alleged that any of the contracts' terms were inconspicuous or incomprehensible; on the contrary, it appears they were plainly disclosed and unambiguous. In sum, Clark has failed to allege sufficient factual

19

matter to show substantive unconscionability; her unconscionability claim therefore fails as a matter of law.[8]  Defendant's Partial Motion to Dismiss therefore is **GRANTED** as to Count VII.

E. <u>Count VIII (Civil Usury)</u>

In Count VIII, Clark raises a claim for civil usury under O.C.G.A. § 7-4-2, which provides that "[w]here the principal involved is $3,000.00 or less, such rate shall not exceed 16 percent per annum simple interest on any loan, advance, or forbearance to enforce the collection of any sum of money . . . ." O.C.G.A. § 7-4-2(a)(2).  "Under Georgia law, a loan is usurious if: (1) there is a loan or forbearance of money, either express or implied; (2) it is made with the understanding that the principal will be returned; (3) a greater profit than is authorized by law is agreed upon; and (4) the contract is made with an intent to violate the law."  <u>Henson v. Columbus Bank & Trust Co.</u>, 770 F.2d 1566, 1573 (11th Cir. 1985).

---

[8] This conclusion is reinforced by the fact that under the terms of the contracts, Clark was obligated to make payments for a period of only six months, after which she could return the subject furniture items and walk away from the contracts with impunity.  This right to opt-out of the contracts, albeit after six months, further weakens Clark's unconscionability claim.  <u>See, e.g.</u>, <u>Losapio v. Comcast Corp.</u>, No. 1:10-cv-3438, 2011 WL 1497652, at *6 (N.D. Ga. Apr. 19, 2011) (rejecting plaintiff's claim for unconscionability and finding arbitration provision enforceable where plaintiff had the right to opt out within thirty days and without adverse consequences).

In this case, the contracts at issue contain a term entitled "Total Amount to Acquire Ownership," which is the amount of money a customer would pay for an item or items after making lease payments for the entirety of the "Lease Ownership" term (i.e., for paying over a specified period of time).[9]  Clark alleges this to constitute civil usury because the "Total Amount to Acquire Ownership" is greater than the amount that would be calculated if the "Cash Price" of the item or items were allowed to grow at the statutory rate of sixteen percent (set out in O.C.G.A. § 7-4-2(a)(2)) for the term length required to obtain ownership of the item or items.  (Second Am. Compl., Dkt. [6] ¶¶ 66, 69.)

Defendant moves to dismiss this Count, arguing that the contracts at issue cannot give rise to a claim for usury because none constitutes "a loan or forbearance of money."  (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 14-19.)  In response, Clark argues that the contracts "constitute credit sales and retail installment transactions" and therefore that each "constitutes a loan or forbearance of money."  (Pl.'s Resp. in Opp'n, Dkt. [11] at 11-12.)

The Court finds Clark's civil usury claim to fail as a matter of law because none of the contracts at issue constitute a "loan or forbearance of money."  "The

_____

[9] The term length required under the "Lease Ownership" provision varies among the parties' agreements.  (Compl. Ex. A-E, Dkt. [1] at 4.)

authorities are clear and explicit that, to constitute usury, there must be a loan directly or indirectly, and that a real sale without any intent to loan, though it may be oppressive, cannot be usurious." Golden Atlanta Site Dev. v. Nahai, 683 S.E.2d 166, 169 (Ga. Ct. App. 2009) (internal quotations and citation omitted). A loan is defined "as the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement, express or implied, to repay the sum with or without interest." Isaacson v. House, 119 S.E.2d 113, 116 (Ga. 1961).

Georgia law is clear that time price contracts—i.e., contracts under which a buyer is permitted to pay for goods over time—do not constitute loans and therefore are not subject to the usury laws. Gen. Fin. Corp. v. Davis, 191 S.E.2d 865, 868 (Ga. Ct. App. 1972); see also Bowen v. Consol. Mortg. & Inv. Corp., 156 S.E.2d 168, 171 (Ga. Ct. App. 1967) ("The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and though in a given instance this difference may exceed the [lawful interest rate], the law as to usury is not applicable."). For example, in Davis, the court rejected the plaintiff's argument that a contract for the sale of an automobile constituted a loan, finding it to be, on the contrary, a time price contract, to which Georgia's usury laws did not apply. 191 S.E.2d at 868. Under the terms

of the contract alleged in <u>Davis</u>, the plaintiff purchased a used automobile for "a total time price of $3,032.36, less a down payment in cash of $350, leaving a time balance of $2,682.36" and agreed to make 36 equal monthly payments. <u>Id.</u> The Georgia Court of Appeals held, "From the very face of the contract . . . it is apparent that this is a time price contract and the law as to usury is not applicable. There was no loan of money; plaintiff purchased time to pay for the automobile." <u>Id.</u> (citations omitted).

Similar to the contract at issue in <u>Davis</u>, the contracts in this case allow Clark to pay for the leased items over time, albeit for a higher price. As explained, a seller has a right to make a difference in his cash price and his time price; this is not usury. Accordingly, because the law of usury does not apply to the contracts at issue in this case, Defendant's Partial Motion to Dismiss is **GRANTED** as to Count VIII.

<u>F.</u>      <u>Count IX (Criminal Usury)</u>

Similarly, in Count IX, Clark alleges that Defendant violated Georgia's criminal usury statute, O.C.G.A. § 7-4-18,[10] by charging an interest rate greater

---

[10] Under O.C.G.A. § 7-4-18(a), "Any person, company, or corporation who shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than 5 percent per month, either directly or indirectly . . . by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor."

than five percent per month under the November Living Room Contract. (Second Am. Compl., Dkt. [6] ¶¶ 74, 76.) Defendant moves to dismiss this Count on two grounds. First, Defendant argues that there is no private right of action under the criminal usury statute. (Def.'s Partial Mot. To Dismiss, Dkt. [9] at 21.) Second, Defendant argues that Clark cannot state a claim for criminal usury because, like civil usury, the statute only applies to loans and the contracts at issue are not loans. (Id.)

The Court agrees with Defendant that Clark has failed to state a claim for criminal usury. As discussed above in connection with Clark's claim for civil usury, the contracts at issue in this case are not loans. Therefore, the criminal usury law does not apply. Gold Kist, Inc. v. McNair, 303 S.E.2d 290, 291 (Ga. Ct. App. 1983) ("[The criminal usury] statute by its terms applies only to loans of money . . . ."); see also footnote 10, supra (quoting criminal usury statute, which by its terms applies only to loans or advances of money). Defendant's Partial Motion to Dismiss therefore is **GRANTED** as to Count IX.[11]

---

[11] Given that Clark has failed to allege the existence of a loan or loans, which failure precludes her criminal usury claim, the Court need not rule on the issue of whether a private right of action exists under the statute.

AO 72A
(Rev.8/82)

**G.** **Count X (Violation of Georgia's Retail Installment and Home Solicitation Sales Act)**

In Count X, Clark alleges that Defendant violated Georgia's Retail Installment and Home Solicitation Sales Act ("RISA"), O.C.G.A. §§ 10-1-1 to -16. Specifically, Clark alleges that the contracts at issue "constitute Retail Installment Contracts as defined by O.C.G.A. § 10-1-2(a)(9)" and that Defendant violated RISA by charging a greater interest rate than that permitted by the relevant statutory provision, O.C.G.A. § 10-1-3(d). (Second Am. Compl., Dkt. [6] ¶¶ 79-80.) Clark states that her RISA claim is brought in the alternative to her claims for civil and criminal usury, set out in Counts VIII and IX. (Id. ¶ 79.) Defendant moves to dismiss this Count on grounds that the contracts at issue are not "Retail Installment Contracts"; to this end, Defendant argues that the contracts at issue are <u>leases</u>, and that to constitute a "Retail Installment Contract," a contract must be one for <u>sale</u>. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 22-23.)

O.C.G.A. § 10-1-3(d) provides: "Notwithstanding any other law, the seller under a retail installment contract may charge, receive, and collect a time price differential,[12] which shall not exceed $0.13 per $1.00 per year on the unpaid

_____

[12] RISA defines "[t]ime price differential" as "the amount, however denominated or expressed, paid or payable for the privilege of purchasing goods or

balance." Thus, to state a violation of the statute, two elements must be alleged:

first, the existence of a "retail installment contract" and, second, that the seller

"charge[d], receive[d], [or] collect[ed] a time price differential . . . exceed[ing]

$0.13 per $1.00 per year on the unpaid balance." O.C.G.A. § 10-1-3(d).

> Georgia's RISA defines a "retail installment contract" as follows:

> "Retail installment contract" or "contract" means an instrument or
> instruments reflecting one or more <u>retail installment transactions</u>
> entered into in this state pursuant to which goods or services may be
> paid for in installments. The term includes a series of transactions
> made pursuant to an instrument or instruments providing for the
> addition of the amount financed plus the time price differential for
> the current sale to an existing balance. It does not include a
> revolving account or an instrument reflecting a sale pursuant
> thereto.

O.C.G.A. § 10-1-2(a)(9) (emphasis added). A "retail installment transaction" is

defined, in turn, as "any transaction to sell or furnish or the sale of or the

furnishing of goods or services evidenced by a retail installment contract or a

revolving account." <u>Id.</u> § 10-1-2(a)(10). The Georgia Court of Appeals has

noted that "[a] retail installment contract contemplates a single closed

transaction wherein the time-price differential is computed and added on to the

--------

services to be paid for by the buyer in installments; it does not include the amounts, if
any, charged for insurance premiums, delinquency charges, attorney's fees, court
costs, or official fees." O.C.G.A. § 10-1-2(a)(15).

amount of the cash sale price to be financed." <u>Brown v. Jenkins</u>, 218 S.E.2d 690, 693 (Ga. Ct. App. 1975).

In accordance with the foregoing, to state a claim under RISA, a plaintiff must allege: (1) the existence of an agreement; (2) that the agreement reflects "any transaction to sell or furnish or the sale of or the furnishing of goods"; (3) that the goods "may be paid for in installments"; and (4) that the seller has charged, received, or collected a time price differential exceeding $0.13 per $1.00 per year on the unpaid balance.  O.C.G.A. §§ 10-1-2(9) to -2(10), -3(d). The Court finds that Clark has sufficiently alleged each of these elements.

First, Clark has alleged that she entered into several contracts with Defendant for the sale or furnishing of goods.  (Second Am. Compl., Dkt. [6] ¶¶ 9-13; <u>see, e.g.</u>, <u>id.</u> ¶ 9 ("[The September Bedroom Contract] was for the purchase of a bedroom set.").)  She also has alleged that the goods may be paid for in installments.  (<u>Id.</u> ¶ 69 (alleging that Clark could obtain ownership of the items after "complet[ing] all 24 monthly payments").)  Finally, Clark has alleged that Defendant charged a higher rate of interest under the contracts than the thirteen-percent maximum permitted under RISA.  (<u>See</u> <u>id.</u> ¶ 80 (alleging that "[b]ecause every loan made by Defendant to [Clark] violates Georgia's civil usury cap of 16 percent per year, every loan also violates [RISA]").)  Accepting

the foregoing allegations as true, as the Court must on a motion to dismiss, the Court finds that Clark has stated a claim.

As stated above, Defendant argues that its contracts with Clark constitute leases and therefore cannot constitute retail installment contracts. (Def.'s Partial Mot. to Dismiss, Dkt. [9] at 22.) This argument, however, is without merit. As a threshold matter, as explained above, Clark sufficiently has alleged the required elements of a "retail installment contract." Furthermore, another provision of the Georgia Code, found in the same title as the statute at issue, suggests that, at least under certain circumstances, a "lease" may constitute a "retail installment transaction" within the meaning of RISA. <u>See</u> O.C.G.A. § 10-1-681(1)(E) (excluding from the definition of lease-purchase agreements "[a] <u>lease</u> or agreement <u>which constitutes a retail installment transaction as defined in paragraph (10) of subsection (a) of Code Section 10-1-2</u>") (emphasis added). Accordingly, Defendant's motion to dismiss is **DENIED** as to Count X.

> H. <u>Count XI (Violation of Retail Installment Statutes from Other States)</u>

In Count XI, Clark alleges violations of the retail installment statutes "from other states," purportedly on behalf of a national class or state subclasses "to be designated after appropriate discovery." (Second Am. Compl., Dkt. [6]

¶¶ 84-89.)  Defendant moves to dismiss this Count for lack of standing.  (See Def.'s Partial Mot. to Dismiss, Dkt. [9] at 23 ("Plaintiff, a Georgia resident, has no standing to assert a claim against [Defendant], a Georgia corporation, under any other's [sic] state's Retail Installment Statute, when the conduct complained of occurred solely in Georgia.").)

The Court agrees with Defendant that Clark lacks standing to assert claims against Defendant under the "Retail Installment Statutes" of other states.  Article III of the Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III., § 2.  An "essential and unchanging part of the case-or-controversy requirement of Article III" is the concept of "standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  "[T]he irreducible constitutional minimum of standing contains three elements": "[T]he plaintiff must have suffered an injury in fact"; "there must be a causal connection between the injury and the conduct complained of"; and "it must be likely . . . that the injury will be redressed by a favorable decision."  Id. at 560-61 (internal quotations and citation omitted).  The plaintiff bears the burden of demonstrating these elements with respect to each asserted claim. Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006).

AO 72A
(Rev.8/82)

The foregoing principles apply with equal force in the class action

context.  As the Supreme Court has explained:

> That a suit may be a class action . . . adds nothing to the question of
> standing, for even named plaintiffs who represent a class must
> allege and show *that they personally have been injured*, not that the
> injury has been suffered by other, unidentified members of the class
> to which they belong and which they purport to represent.

Lewis v. Casey, 518 U.S. 343, 357 (1996) (emphasis added) (internal quotations

and citation omitted).  Thus, "a plaintiff cannot include class action allegations

in a complaint and expect to be relieved of personally meeting the requirements

of constitutional standing, even if the persons described in the class definition

would having standing themselves to sue."  Griffin v. Dugger, 823 F.2d 1476,

1483 (11th Cir. 1987) (internal quotations and citation omitted).  To the

contrary, each claim raised in a class action complaint "must be analyzed

separately, and a claim cannot be asserted on behalf of a class *unless at least one*

*named plaintiff has suffered the injury that gives rise to that claim*."  Id.

(emphasis added).  See also Carter v. West Publ'g Co., 225 F.3d 1258, 1262

(11th Cir. 2000) ("'In addition to the requirements expressly enumerated in Rule

23, class actions are also subject to the more general rules such as those

governing standing . . . . [A] plaintiff who lacks the personalized, redressable

injury required for standing to assert claims on his own behalf would also lack

AO 72A
(Rev.8/82)

standing to assert similar claims on behalf of a class.'") (quoting <u>Holmes v.</u> <u>Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124, 135 (3d Cir. 2000)).

In this case, the Court agrees with Defendant that Clark lacks standing to assert claims under the "Retail Installment Statutes" of states other than Georgia because she has not alleged a personalized injury for purposes of those claims. As Defendants correctly point out, the allegations of the Second Amended Complaint pertain exclusively to Defendant's dealings with Clark in Georgia pursuant to contracts executed and performed in Georgia. Accordingly, the injuries Clark alleges arise only under the laws of Georgia and do not implicate the laws of other states. Because Clark has not alleged a personalized injury arising under the "Retail Installment Statute" of any state other than Georgia, she lacks standing to assert claims under those statutes. Defendant's Partial Motion to Dismiss therefore is **GRANTED** as to Count XI.

### Conclusion

In accordance with the foregoing, Defendant's Partial Motion to Dismiss [9] is **GRANTED in part and DENIED in part**. It is **GRANTED** with respect to Counts II (False Advertising), VII (Unconscionability), VIII (Civil Usury), IX (Criminal Usury), and XI (Violation of Georgia Retail Installment Statutes From Other States). It is **DENIED** with respect to Counts V (Breach of Contract Via

AO 72A
(Rev.8/82)

Breach of Good Faith and Fair Dealing), Count VI (Unjust Enrichment), and

Count X (Violation of Georgia Retail Installment and Home Solicitation Sales

Act Interest Rate Cap).


     **SO ORDERED**, this  _26th_  day of September, 2012.


                       _____
                       RICHARD W. STORY
                       UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)